## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 92-CA-00655-SCT

*JOSEPH GARRETT*

*v.*

*NORTHWEST MISSISSIPPI JUNIOR COLLEGE N/K/A NORTHWEST MISSISSIPPI COMMUNITY COLLEGE*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/26/92 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANA J. SWAN |
| | RALPH E. CHAPMAN |
| | KEITH M. ALEXANDER |
| ATTORNEYS FOR APPELLEE: | ROBERT H. HARPER |
| | NAT G. TROUTT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 5/16/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/6/96 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a May 26, 1992 order of the Tate County Circuit Court granting Northwest Mississippi Junior College's motion for summary judgment in a negligence action. Joseph Garrett brought suit against Northwest after he sustained a severe injury to his right thumb while working on a milling machine in his tool and die class. He alleged that Northwest failed "to provide reasonably safe tools, products and instrumentalities; a reasonably safe place to work and train; as well as other acts of negligence." Finding that there were questions of fact for a jury to determine, we reverse and remand for a trial on the merits.

I.

¶2. On April 12, 1985, Joseph Garrett cut off his thumb while working on a horizontal milling machine in his tool and die class at Northwest Mississippi Junior College. Garrett described the milling machine as a rotary blade used to "cut slots." He was "mike-ing" a piece of metal on the machine when the accident occurred;

that is, using a micrometer, a device that measures the width of the metal by very small degrees of tolerance. In describing the accident, Garrett stated, "I was mike-ing the metal -- I mean the cutoff blade that I was cutting. And . . . [then] . . . I looked on top of the machine and my finger [thumb] was up there."

¶3. At the time of the incident, Garrett stated that his instructor, Frank Houck, was in his office at the opposite end of the room from the milling machine. Houck, however, characterized the distance as "a matter of several feet away," and said he had gone to his office to retrieve a drill bit for another student.

¶4. Garrett's deposition testimony suggests that this was the first time he had operated the machine on his own, and that he had not received instruction from anyone on its use. He indicated that there was a self-paced, ad hoc system of training on the machines, "[Y]ou see a machine open, you get on it," and that he never took a safety test on the milling machine.

¶5. Houck acknowledged in his deposition that the students did not have to demonstrate any proficiency on the machinery before using it. He stated that he gave students a safety lecture and personal demonstration and "When they operate it, I'm constantly with them." He further stated, "I tell them -- ask questions and demand an answer they can understand".

¶6. Houck, who indicated that Garrett was somewhat "slow," recalled that at least one time prior to the accident, he had warned him about the proper use of the machine. Houck testified that

> [o]n the date prior to the time he was injured . . . I noticed Joseph Garrett had his left hand close to the cutter on the horizonal milling machine while it was in operation. Realizing that he was not following his safety instructions, I pulled his hand out and slapped it and said, "Joe, you know better than that. Don't ever put your hand around the cutter." About the same time, some other students got on Joseph Garrett about doing what he had been instructed not to do.

¶7. Garrett testified that Houck had observed him while he was working on the machine, and warned him, "Don't get too close to it," or words to that effect, but that the teacher did not knock his hand away. Garrett further testified that he was unsure of the precise meaning of Houck's instruction to not get too close to the machine.

## II.

¶8. Summary judgment is appropriate "if the pleadings, depositions, answers, to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a matter of law." Miss. R. Civ. P. 56(c). The non-moving party will survive a motion for summary judgment if he can establish a genuine issue of material fact by the means available under the rule. *Spartan Foods Systems v. American National Insurance*, 582 So.2d 399 (Miss. 1991) (citing *Galloway v. Travelers Insurance Co.*, 515 So.2d 678, 682 (Miss. 1987)).

¶9. While it has been emphasized that any factual issue must be "material," *Simmons v. Thompson Machinery of Mississippi, Inc.*, 631 So.2d 798, 801 (Miss. 1994), it is also true that evidentiary matters -- admissions in the pleadings, answers to interrogatories, depositions, affidavits -- are viewed in the light most favorable to the non-moving party, who has the benefit of every reasonable doubt. *Simmons*, 631 So.2d at 802.

## III.

¶10. Garrett contends that the circuit court erred in granting Northwest's motion for summary judgment. Reviewing the evidence in the record before us in a light most favorable to Garrett, we find that there are genuine issues of material fact regarding the extent of the safety and use instruction he received on the milling machine as well as the adequacy of supervision by his teacher that must be resolved before the extent, if any, of Northwest's liability can be determined.

¶11. Our review of cases from other jurisdictions suggests that the extent of the duty owed by vocational education teachers and schools to students is framed largely in terms of the degree of safety and use instruction that students receive on the particular machine that is being used when an accident occurs, as well as the extent of teacher supervision at the time of the accident. Where, as in the case *sub judice,* there are disputed issues of fact regarding such matters, we are convinced that summary judgment is not appropriate.

¶12. In *Miles v. School District No. 138 of Cheyenne County*, 281 N.W.2d 396 (Neb. 1979), where the student's own negligence was found to be the sole proximate cause of injuries she sustained while operating a jointer machine in shop class, the Nebraska court looked at the extent of the training she had received on the machine under the teacher's supervision, the safety instruction she had received, her performance on safety examinations, and the frequency with which she had used the jointer prior to her accident. Thus, the court found that:

> By reason of instruction, demonstration, and experience for over 1 year in the safe and proper operation of the jointer machine, Miss Miles was thoroughly familiar with its operation and the hazards attendant thereto. Mr. Shearer's requirement that students who failed the safety examination write the correct answers to the questions and submit them for his approval was reasonable under the facts and circumstances in the present case.

*Miles*, 204 Neb. at 109, 281 N.W. 2d at 398.

¶13. In *Paulsen v. Unified School District No. 368*, 239 Kan. 180, 717 P.2d 1051 (1986), where a student was injured after using a table saw without first making sure that the safety guard was in place, a divided Kansas Supreme Court affirmed a directed verdict after finding that the defendants had breached no duty to the student. It affirmed the trial court's determination that the teacher had a duty to properly supervise the student and that the school district had a duty to supervise the teacher and to provide a reasonably safe environment for the students. *Paulsen,* 239 Kan. 181, 717 P.2d at 1053. There, the court noted in particular the extensive instruction that the student had received on the machine in question.

> Paulsen had taken a beginning woodworking class the previous year where he was instructed in the proper use of power tools. That class spent four to six weeks discussing safe use of the tools, and two of those weeks were spent on the Oliver table saw. Paulsen had passed a test on safe use of the saw. During his second year of woodworking, Paulsen was again instructed on the safe use of the table saw and again passed a test on safety prior to use of the equipment.

*Paulsen*, 239 Kan. at 181, 717 P.2d at 1053. It acknowledged, however, that the instructor had failed to implement or enforce any rules about using the table saw without the safety guard, which, at the time of the accident, was lying on the floor after the instructor replaced the saw blade. *Paulsen,* 239 Kan. at 182, 717 P. 2d at 1053.

¶14. The Tennessee court focused on the adequacy of the teacher's instruction and supervision in determining liability for the injuries sustained by a student who was assisting another student in the use of a power driven drill press. ***Roberts v. Robertson County Board of Education***, 692 S.W.2d 863 (Tenn. Ct. App. 198). It emphasized the failure to give *machine-specific* instructions for the safe operation of drill press.

> There is no evidence in this record that this demonstration of the drill press or any other instruction included warnings to the students of the dangers attendant to more complicated uses of the drill press or instructions concerning how students should help each other use the drill press. . . .

> Yount had never received instruction concerning the use of the drill press to drill holes in larger pieces of wood. Likewise, he had never tried to do this before and had never seen anyone else try to use the drill press in this way. Mr. Ballard testified that this use required a more elaborate setup and that it could be dangerous if the drill press was not set up properly.

*Roberts*, 692 S.W.2d at 867. Defining the standard of care to which a shop teacher should be held, the Tennessee court further stated:

> Based upon these precedents, we find that a high school vocational teacher has the duty to take those precautions that any ordinarily reasonable and prudent person would take to protect his shop students from the unreasonable risk of injury. The extent of these precautions must be determined with reference to the age and inexperience of the students involved, their less than mature judgment with regard to their conduct, and the inherently dangerous nature of the power driven equipment available for their use in the shop. In order to discharge this duty, it is incumbent upon a teacher, at a minimum, to instruct his students in the safe and proper use of the equipment, to warn the students of known dangers, and to supervise the students to the extent necessary for the enforcement of adequate rules of shop safety.

> Once the trial court has determined that the defendant was under a duty to protect the plaintiff against the event that did, in fact, occur, then it must be proven that the defendant's actions or failure to act constituted a breach of this duty. This second element of proof in a negligence case usually requires a factual determination that can only be made upon the unique facts of each case.

*Roberts,* 692 S.W. 2d at 870. ***See also Lawrence v. Grant Parish School Board***, 409 So.2d 1316, 1320 La. (1982) (school board liable to student injured on power saw stored in welding workshop where pupils not instructed why they were not to use the equipment and teacher not present at time of injury); ***Matteucci v. High School District No. 208, Cook County***, 4 Ill. App. 2d 710, 714, 281 N.E.2d 383, 386 (1972) (use of "dangerous instrumentality" requires due care on the instructor's part, including instruction on "proper use of the machine" as well as "proper supervision to enforce necessary rules of safety").

IV.

¶15. Matters of safety and use instruction on specific machinery and the extent of instructor supervision have been outcome determinative in the shop class injury cases from other jurisdictions. Each has been decided according to its own particular factual scenario. In the case *sub judice,* there are disputed questions of fact on the critical issues of instruction and supervision. Summary judgment, therefore, was not

appropriate. Accordingly, we reverse the decision of the circuit court and remand for trial on the merits.

¶16. **REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**