# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00198-SCT

*DOROTHY NICOLE SUMMERS, BY AND THROUGH HER NEXT FRIEND, JOHNNIE DAWSON, JOHNNIE DAWSON AND TIMOTHY SUMMERS, M.D.*

*v.*

*ST. ANDREW'S EPISCOPAL SCHOOL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/1998 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GAIL WRIGHT LOWERY |
| ATTORNEYS FOR APPELLEE: | JAMES A. KEITH |
| | CHARLES EDWIN ROSS |
| | KIMBERLY N. HOWLAND |
| | ELIZABETH ROBBINS LEE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/11/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/1/2000 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Dorothy Nicole ("Nikki") Summers, a minor child, by and through her next friend and mother, Johnnie Dawson, and her parents, Johnnie Dawson and Timothy Summers, M.D. (collectively the plaintiffs) filed against St. Andrew's Episcopal School, Inc. ("St. Andrew's") on July 11, 1996. This action arose out of an incident on May 13, 1996, on the playground of the school. The claims are in nature of personal injuries, both psychological and physical. Nikki alleges that St. Andrew's teachers and/or its assistant teachers failed to exercise reasonable care in supervising the activities of the playground and that their alleged lack of adequate supervision caused her to sustain emotional harm. Nikki seeks compensatory and punitive damages. Nikki's parents also seek compensatory damages for emotional distress and lost wages that they sustained as a result of the alleged injuries suffered by Nikki as well as punitive damages.

¶2. Prior to any actions requiring court intervention, the plaintiffs filed a Motion for Recusal based upon Dr. Summers' prior history with Circuit Judge W. Swan Yerger. Judge Yerger declined to recuse. Judge Yerger also granted St. Andrew's Motion for Partial Summary Judgment on the claims of the parents on August 14, 1997. On October 1, 1998, Judge Yerger dismissed the remaining claim of Dorothy Nicole Summers.

¶3. The circuit court ruled that the undisputed material facts mandated summary judgment on the compensatory damages claim. The court further found the actions of St. Andrew's were not willful, wanton, or malicious, and as such, summary judgment on the punitive damage claim was also granted.

## STATEMENT OF THE FACTS

¶4. Dorothy Nicole Summers ("Nikki") was a 5 year old enrolled in kindergarten at St. Andrew's for the 1995-96 school year by her parents, Johnnie Dawson and Dr. Timothy Summers. There is no dispute that an incident occurred on May 13, 1996, involving Nikki. However, the characterization of the incident is disputed. The trial court adopted Nikki's characterization as set forth in her affidavits.[1]

> I attended St Andrews in 1995-96 as a kindergarten student. My teacher was Candace Coker and the Principal was Jean Jones. I am eight (8) years old and attend New Hope Christian School. I attended school on May 13, 1996 and I recall going outside to play. While I was outside several of the students in the kindergarten class threw me to the ground and held down my arms and legs. My dress was pulled up, my shorts were pulled down and my panties were pulled down. My private parts were seen by the children. My panties were pulled down to above my knee. The children also touched me on my private parts while I was being held down.

> I told the children to stop and no one came to help me. A second group of children came up and the children repeated what they had done before. I continue to tell them to stop. Another child finally came up and I was let go.

> We were on the playground in the back under the trees. The teachers could not see us. They were sitting down talking. I did not see them get up and walk around the play area.

> Before the children did this to me, earlier in the school year I had told my teacher, Ms. Coker that one of my classmates had kicked me. I was also scratched in the face with a pine cone and slapped. At another time, I was spit on. I told my parents and they talked to my teacher about it. This all happened before May 13, 1996.

> No adult came to help me on May 13, 1996. I fought trying to get away but no adult came to help me. The children did this to me for a long time. We spent most of the play period in the back.

> I felt sad and embarrassed by the incident. I told Dr. Wood Hiatt about this incident and Dr. Glenda Scallorn. I also talked to my parents about it.

¶5. During the 1995-96 academic school year, there were five kindergarten classes at St. Andrew's, with a maximum of 16 children in each class, for a total of no more than 80 kindergartners. Nikki's class had a total of only 15 children. Each class was staffed with one teacher, and all five classes shared three assistant teachers.

¶6. The incident occurred on the playground on May 13, 1996, sometime during the noon recess. The

normal schedule for the kindergarten children at St. Andrew's was to eat their lunch in their classroom from 11:00 a.m.-11:30 a.m. The teachers would then escort the children to the playground. From 11:30-12:00, the assistant teachers would eat their lunch. At approximately 12:00 noon when the assistant teachers had finished their lunch, they relieved the teachers on the playground so that the teachers could eat their lunch. After the 30-minute lunch break, the teachers would return to the playground to gather their students together for the remaining afternoon activities. This routine was followed on the date of the incident. According to the policy of the school, the children's activities on the playground are monitored at all times by a minimum of at least one teacher or assistant teacher for each class of 16 kindergarten children.

¶7. On this particular day, Candace (Candy) Coker ("Coker"), Nikki's teacher, supervised the playground for 10 minutes because she had a parent-teacher conference. Angie Smith, a substitute for the regular assistant teacher, monitored the children's activities on the playground. At the time the incident occurred, there were between 62 and 64 children on the playground being supervised by at least four adults. None of the adults present on the playground were aware that the incident had occurred.

¶8. Coker learned of the incident the evening of May 13, 1996, when a parent called her at home and informed her that her daughter had related an incident that had happened at school. The next morning, upon Nikki's arrival at school, she informed Coker that some of her girl classmates had held her arms down, tickled her, and pulled on her panties. Coker then asked the children she could determine were involved in the incident to tell her what happened. Nikki was a part of this group. In the group discussion, the children stated that four or five of them were playing together when Nikki laid down on the gravel to play dead. Nikki told Coker she was laughing when the game started. Some of the group then suggested that the group tickle Nikki to wake her up. One of the girls began doing that when she asked two other girls to hold Nikki's arms down so that she could tickle her some more. The girl who was tickling Nikki pulled on her panties. Nikki also told Coker she did not like it when the girls pulled on her panties, and she asked them to stop, but they did not. The children also told Coker that about the same time that one of the girls was pulling on Nikki's panties, three boys walked up and saw what was happening, and said,"Do it again so we can see", and the girls began tickling Nikki again. According to the children in the group, at that point, they stopped. Nikki discussed the incident in this group and corrected others with details about what happened. Coker instructed the children to talk to their parents about the incident. During the rest of the school week, Nikki continued to play with her regular classmates, including the same group of girls who were involved in the incident.

¶9. The circuit court, having heard and considered the matter, noted as to the issues on which the plaintiffs bear the burden of proof at trial, St. Andrew's need only demonstrate an absence of evidence in the record in support of an essential element of the plaintiffs' claim. According to the trial court, the plaintiffs had not met this burden in that evidence had not been produced in the record upon which a reasonable juror could find that the incident was foreseeable, that St. Andrew's did not provide adequate supervision, and that there was any proximate cause between St. Andrew's acts or omissions and the incident.

¶10. The court found that the undisputed material facts mandated that summary judgment be entered in favor of St. Andrew's on plaintiff's compensatory and punitive damages claim. The court also held that the actions of St. Andrew's, even assuming arguendo that an issue of fact existed as to the issue of underlying liability, did not support any finding that the actions were willful, wanton, or malicious, and as such ordered summary judgment on the punitive damage claim.

¶11. Aggrieved by the circuit court's judgment, the plaintiffs appeal to this Court and assign the following issues as error:

## STATEMENT OF THE ISSUES

**I. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE APPELLANTS' MOTION FOR RECUSAL.**

**II. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE PARENT'S CLAIM FOR RELIEF.**

**III. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE CLAIMS OF THE MINOR CHILD.**

**IV. WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT PUNITIVE DAMAGES WERE NOT RECOVERABLE.**

## STANDARD OF REVIEW

¶12. The trial court may grant summary judgment where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Miss.R.Civ.P. 56(c). Numerous, immaterial facts may be controverted, but only those that "affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Sherrod v. United States Fidelity & Guar. Co.,* 518 So. 2d 640, 642 (Miss. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d. 202, 211(1986)). This Court reviews de novo a trial court's grant of a summary judgment motion. *Short v. Columbus Rubber & Gasket Co.,* 535 So. 2d 61, 63 ( Miss. 1988) . We must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to the nonmoving party, and that party must be given the benefit of every reasonable doubt. *O'Cain v. Harvey Freeman & Sons, Inc*., 603 So. 2d 824, 828 (Miss. 1991) (citing *Smith v. Sanders*, 485 So. 2d 1051, 1054 (Miss. 1986)). The burden of demonstrating that no genuine issue of fact exists is on the moving party. *Short*, 535 So. 2d at 63-64.

## DISCUSSION OF LAW

**I. WHETHER THE LOWER COURT ERRED IN DENYING THE APPELLANTS' MOTION FOR RECUSAL**.

¶13. Miss. Code Ann. § 9-1-11(1991), provides: "The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties." Section 165 of the Mississippi Constitution of 1890 contains essentially the same provision. *Rutland v. Pridgen,* 493 So.2d 952, 953 (Miss. 1986).

¶14. "When a judge is not disqualified under the constitutional nor statutory provisions, the propriety of his or her sitting is a question to review only in case of manifest abuse of discretion." *Ruffin v. State,* 481 So. 2d 312, 317 (Miss. 1985).

¶15. However, this Court in *Rutland v. Pridgen* also looked to Canon 3 (C)(1) of the Code of Judicial Conduct of when a judge should recuse himself to help establish a second standard. 493 So. 2d at 953. The conduct of the trial judge in this case must be examined in light of the dictates of the Code of Judicial Conduct. Specifically, Canon 3(C)(1) of the Code which requires, in pertinent part, disqualification of a judge when his or her impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. In other words, would a "reasonable person, knowing all the circumstances, harbor doubts about [the judge's] impartiality?" *Rutland*, 493 So. 2d at 954.

¶16. Canons such as 3 (C)(1) "enjoy the status of law such that we enforce it rigorously, notwithstanding the lack of litigant's specific demand." *Davis v. Neshoba County Gen. Hosp.,* 611 So. 2d 904, 905 (Miss.1992). The standard by which we determine if a judge should have disqualified himself is an objective standard which this Court has adopted and is applied under Canon 3. *McBride v. Meridian Public Improvement Corp.,* 730 So. 2d 548, 551 (Miss. 1998). A presumption of impartiality exists that a judge, sworn to administer impartial justice, is qualified and unbiased. *McBride,* 730 So. 2d at 551. To overcome the presumption, the evidence must produce a "reasonable doubt". *Id.* On appeal, however, this Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. *Beyer v. Easterling,* 738 So. 2d 221, 228 (Miss. 1999).

¶17. The evidence adduced reveals that the trial judge, as lead attorney, had examined Dr. Summers as a witness at the trial of *General Motors Corp. v. Jackson,* 636 So. 2d 310 (Miss. 1992), and at depositions in other cases where Dr. Summers testified as a medical expert witness. The trial of the *Jackson* case was held sometime during1989-1990, and this Court's decision was in 1992. Dr. Summers was a treating physician of the plaintiff in the *Jackson* litigation. Dr. Summers testified he had been an expert witness over many years in cases in which Judge Yerger or his firm had represented General Motors.

¶18. Dr. Summers testified the tenor of the cross-examination was one of negativism, hostility, and vindictiveness and that it created a considerable amount of concern for him. The cross-examination would go to questions about him personally such as how much money he made, what companies he owned, and how much money he owned in the companies. According to Dr. Summers, his relationship with attorney Yerger over the years had been an ongoing adversarial relationship. Based on previous cases in which he had been involved as an expert witness, Dr. Summers had no doubt in his mind that Judge Yerger could not impartially preside over this case.

¶19. During the hearing of this matter, Judge Yerger stated he did not even recognize Dr. Summers initially in the courtroom on the day of the hearing on the plaintiffs' motion to compel and he did not remember the case nor the facts of the case. He was of the opinion that their relationship during the depositions and at the trial had been professional but vigorous.

¶20. The judge went on to say that he had no personal animosity towards Dr. Summers whatsoever, and really had not kept up with him over the years. Based on Canon 3 of the Code of Judicial Conduct, Judge Yerger concluded that he had no reason to be biased and there was no factual basis for any perception of any bias on the part of the court.

¶21. Dr. Summers did not overcome the presumption that Judge Yerger was qualified and unbiased. He did

not prove that a reasonable person, knowing all the facts and circumstances, would harbor doubts about Judge Yerger's impartiality.

¶22. In summary, the judge did not manifestly err in refusing to recuse himself in this case under these particular facts. The judge's cross-examination of Dr. Summers more than five years ago does not create any reasonable doubt about the impartiality of the judge in this cause, and it was not an abuse of his discretion to deny the motion to disqualify.

## II. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST THE PARENTS OF THE MINOR CHILD

¶23. The plaintiffs' second assignment of error on this appeal states the circuit court improperly dismissed the parents' claims for injuries. The question is whether the individual claims of Nikki's parents, taking all their evidence as true, can survive under the present status of Mississippi law.

¶24. The parties' briefs primarily focus on two cases, ***Entex, Inc. v. McGuire,*** 414 So. 2d 437 (Miss. 1982), and ***O'Cain v. Harvey Freeman & Sons, Inc.,*** 603 So. 2d 824 (Miss. 1991). Both cases concern the availability of emotional distress damages for plaintiffs, although not the immediate sufferers of a personal injury tragedy, sustained anxiety either as immediate bystander or after-the fact observers of the sufferings of a close family member.

¶25. In ***Entex***, which this Court discussed the issue of third-party emotional distress recovery, the plaintiff, Ray McGuire, literally pulled his wife from a burning home after an explosion which practically blew away one side of their house. ***Entex,*** 414 So.2d at 437. The court allowed to stand a jury verdict for the mental distress damages. The record, which included medical evidence, showed that the explosions and fire, coupled with the near loss of his wife, was a severely traumatic experience for McGuire. Citing the well-known California case of ***Dillon v. Legg,*** 441 P.2d 912 (Cal.1968), this Court abandoned the traditional impact doctrine and held that McGuire's claim for damages was properly submitted to the jury. ***Entex,*** 414 So. 2d at 444. This Court set forth the following ***Dillon*** factors as important in determining whether a defendant should reasonably foresee injury to a plaintiff, thereby owing a duty of care:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

***Id.***(quoting ***Dillon,*** 441 P.2d at 920).

¶26. The ***Entex*** holding was considered in conjunction with the mental distress claims brought by the children of a deceased nursing home patient in ***Campbell v. Beverly Enterprises,*** 724 F. Supp. 439, 440 ( S.D. Miss. 1989). The plaintiffs in ***Campbell*** sought to recover damages for the mental distress they allegedly suffered after witnessing the results of the mistreatment of their mother. ***Id***. at 440. The district court granted summary judgment for the nursing home and found the family members could not recover mental distress damages under the circumstances presented. However, the court went on to state that third-party witnesses of the harm could recover if there were direct physical injury or threatened violent physical injury to their family member. ***Id.*** at 442.

¶27. The plaintiffs in *Moore v. Kroger Co.,* 800 F. Supp. 429, 433(N.D. Miss. 1992), insisted that *Campbell* expanded *Entex* by allowing recover for mental distress even if plaintiffs are outside the zone of danger and outside the range of immediate sensory perception where the negligence is gross or wanton. It was argued as the alleged severity of the negligence increases, so should the scope of foreseeable plaintiffs. *Id.* at 433. The court in *Moore* however, reasoned that *Campbell's* discussion of grossly negligent behavior was in conjunction with the emotional distress of the immediate victim and that a plain reading of the *Entex* case cautions against recovery for the family members in *Moore*. *Id.* at 433. The range of foreseeable plaintiffs does not include after-the-fact witnesses of the results of an accident as opposed to witnesses of the accident itself. *Id.* at 434.

¶28. The parents here were not located near the scene of the accident, nor was their shock caused by "contemporaneous observance of the accident." Thus, they fail the criteria as a bystander as enumerated in *Dillon*. Thus, the denial of recovery on this basis is appropriate. However, the parents stress they are due relief because the alleged conduct is willful wanton, malicious or intentional wrong. They seem to make the argument because the alleged negligence is severe they should prevail.

¶29. The parents argue a direct action because they have a relationship with St. Andrew's as outlined in the student handbook which states the parents are an integral part of the education process and that at St. Andrew's there is a relationship created. As in *O'Cain,* the parents argue this is a case of gross negligence wherein there is a duty that was breached and there is liability on the part of St. Andrew's to the parents. In *O'Cain*, an apartment tenant sued her landlord seeking damages for emotional distress stemming from the burglary of her apartment and the rape of her roommate. *O' Cain,* 603 So. 2d 824 (Miss. 1991). The lower court was correct in finding that *O'Cain* was not a bystander and could not recover according to the criteria set out in *Entex*. However, the lower court was incorrect in granting summary judgment because the plaintiff alleged as a result of the invasion of her apartment and rape, she had suffered extensive mental, psychological, and emotional injuries and that her claim was not a bystander action. *Id.* at 830. Thus, this Court held the lower court should address whether O'Cain proved the elements of a negligence action: duty-breach-causation-damages. *Id.* at 831.

¶30. St. Andrew's argues that *O'Cain* is dissimilar to the case at bar. O'Cain was in the apartment at the time of the incident. Thus, the Court was allowing a direct action by O'Cain and not one of a bystander. St. Andrew's stresses that here the parents did not witness anything. They do not have a cause of action. Therefore, there was no duty owed to them. The plaintiffs also fail under the premises of *Campbell* because there is no documented physical injury to Nikki nor is there evidence of malicious, gross negligence on the part of St. Andrew's.

¶31. The circuit court concluded that the parents did not have a direct action and that they did not prove willful and wanton negligence. Thus, the circuit court granted the motion for summary judgment.

¶32. This Court has stated that "if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession, this Court has followed the modern tendency and held a legal cause of action exists." *Sears Roebuck & Co. v. Devers,* 405 So. 2d 898, 902 (Miss. 1981). However, in this case, no proof was offered to support mental anguish.

¶33. This Court has held that"[m]ental anguish is a nebulous concept ... and requires substantial proof for recovery."*Morrison v. Means,* 680 So. 2d 803, 805 (Miss. 1996)(footnote omitted). The standard for

mental anguish is elusive. *Id.* This Court has discussed the standard for recovery for mental anguish as follows:

> This Court has held that recovery for mental anguish can be allowable even when there is no presence of a physical injury. Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally-or even unintentionally yet the results being reasonably foreseeable-Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury.

*Mississippi Valley Gas Co. v. Estate of Walker,* 725 So. 2d 139, 148 (Miss. 1998) (quoting *Sears, Roebuck & Co. v. Devers,* 405 So. 2d 898, 902 (Miss. 1981)).

¶34. Stated another way, "the standard is whether defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River Forest Prods., Inc. v. Ferguson,* 662 So. 2d 648, 659 (Miss. 1995). If there is outrageous conduct, no injury is required for recovery of intentional infliction of emotional distress or mental anguish. *Id.* If the case was one of ordinary garden variety negligence, the plaintiffs would have to prove some sort of injury, whether it be physical or mental. *Morrison,* 680 So. 2d at 805. If the conduct was not malicious, intentional or outrageous, there must be some sort of demonstrative harm, and said harm must have been reasonably foreseeable to the defendant. *Id.*

¶35. In this case sub judice there was absolutely no evidence to support emotional or mental anguish. The parents, suffering no bodily injury or trauma, have the burden to prove that the supervision of St. Andrew's was done maliciously, intentionally, or with such gross negligence to show an utter indifference to the consequence. *Id.* at 805. The question then is whether the proof on the parents' behalf, when taken as true, with all reasonable inferences that may be drawn therefrom, shows such negligence. We think not. The record does not show there were any wrongful acts done maliciously or intentionally. Both the parents admit that St. Andrew's had no bad motives toward Nikki and did not intentionally harm her. It is also undisputed that the parents did not suffer any physical trauma, or illness and did not require any medical treatment as result of the incident. Further, there is no objective evidence that the playground incident had any extraordinary effect, either psychological or physical, on the parents. Johnnie Dawson's testimony was: "As a result of the defendant's negligence and carelessness, we have suffered serious mental pain and emotional trauma." This evidence is insufficient to support a claim of mental anguish. *See Strickland v. Rossini,* 589 So. 2d 1268, 1275 (Miss. 1991).

¶36. Under our prevailing case law, there is no legally sufficient evidence of mental anguish in this case. St. Andrew's conduct did not reach the level of outrageous conduct this Court has required for mental anguish. Moreover, the parents did not prove any evidence of an injury resulting from St. Andrew's conduct. Therefore, the circuit court did not err in dismissing the parents' claims.

### III. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST THE MINOR CHILD

¶37. Nikki has suffered undue fright, humiliation, psychiatric and psychological injury. The plaintiffs assert that she has been seen by a psychiatrist and has expressed deep concern about what the other children did to her. The plaintiffs emphasize that it was reasonably foreseeable that the atmosphere in a kindergarten setting could involve violent episodes. Thus, according to plaintiffs, St. Andrew's failed in its duty to

supervise properly and as a result caused Nikki's injuries.

¶38. The circuit court found that the governing Mississippi substantive law is set forth in ***Levandoski v. Jackson County Sch. Dist.***, 328 So. 2d 339 (Miss. 1976). There, the plaintiff charged the principals and teachers with gross, wanton and willful negligence, in that they designed and administered a grossly defective system of reporting absences, in the hiring of incompetent teachers and the negligent and careless in the reporting of student absences. ***Levandoski***, 328 So. 2d at 341. This Court held that even if principals and teachers were negligent in failing to report a child's unauthorized absence, the causal connection between alleged negligence and wrongful death was not sufficient to establish liability. ***Id***. There must be a proximate causal connection between the inadequacy or lack of supervision and the accident. ***Levandoski*** at 342. Thus, the traditional elements of negligence must be proven to hold a school liable for inadequate supervision.

¶39. As a matter of routine practice, St. Andrew's required at least one teacher or assistant teacher to monitor activities on the playground for each kindergarten class of no more than 16 pupils. On the date of the alleged incident, there were four kindergarten classes on the playground. Therefore, four adults were supervising 62-64 children at the time of the alleged incident. Mississippi public kindergartens require a 1:22 teacher-pupil ratio. St. Andrew's notes there is no evidence in the record that shows the teachers were not acting responsibly in their supervision. The plaintiffs, however, stress that no adult was in the area of the incident despite their alleged presence on the playground. The plaintiffs state St. Andrew's did not provide a meaningful presence. The plaintiffs argue that they have met the burden of proximate causal connection because if the teachers had provided supervision for Nikki they could have prevented the incident, and if not total prevention, intervention such that the second episode would not have taken place.

¶40. The school is not an insurer of the safety of pupils, but has the duty of exercising ordinary care, of reasonable prudence, or of acting as a reasonable person would act under similar circumstances. ***Levandoski*** at 342 (citing 38 A.L.R. 3d 830, 834 (1971)). The trial court found that St. Andrew's exercised ordinary care in its supervision. However, this Court has held that public school teachers and administrators are immune from liability under the Mississippi Tort Claims Act, Miss. Code Ann. § 11- 46-1 et seq. (Supp.1999), **if and only if they used ordinary care** in controlling and disciplining their students. *L.W.v. McComb Separate Mun. Sch. Dist.,* No. 97-CA-01465-SCT*,* 1999 WL 682076, at *6 (Miss. Sept. 2, 1999). The issue of ordinary care is a fact question. *Id.* at 7*.* This Court concluded that public schools have the responsibility to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment. *Id.* at 8. While St. Andrew's is a private school, the standard of ordinary care is equally applicable to it under well-established common law principles of negligence.

¶41. Nikki stated in her affidavit that a classmate had kicked her and scratched her in the face with a pine cone and slapped her. The court reasoned that these statements, even if taken as true, do not rise to the level of putting St. Andrew's on notice that an incident as the one alleged on May 13, 1996, could likely happen. Coker stated the incidents were not in any way out of the ordinary for kindergarten-age children. The children were playing 'snake' when Nicole swatted at him and he hissed and swatted back at her. The kicking incident involved a child playing on the playground monkey bars with his feet. Nikki walked too close and was kicked by the swinging feet. The court reasoned neither of the described incidents gave St. Andrew's reasons to foresee the alleged May 13, 1996, incident.

¶42. The court also found that Nikki's affidavit did not establish inadequate or negligent supervision. Nikki stated the teachers could not see them. "We were playing on the playground in the back under the trees. They were sitting down talking." The children had wandered to a "blind spot" that is not visible from the benches and other watch positions established. Sitting on a bench engaging in conversation with fellow teachers when 10 or more of the 16 children in your care are out of sight for a significant period of time is not reasonable. The circuit court found the fact that Nikki purportedly did not see teachers get up and walk around the play area does not in any way mean that the adults were not actively supervising the children on the day of the incident. "Absent special, dangerous circumstances, a school district does not have the duty of providing constant supervision of all movements of pupils at all times. *Levandoski* at 341-42, (quoting 38 A.L.R. 3d at 842).

¶43. The plaintiffs counter this argument citing a Louisiana case, *Sutton v. Duplessis*, 584 So. 2d 362, 365 (La. Ct. App. 1991), which held that the school authorities have a duty to provide reasonable supervision commensurate with the age of the children under the attendant circumstances. *Sutton,* 584 So. 2d at 366. St. Andrew's acknowledges that playground incidents similar to what happened with Nikki are not unusual. The principal stated, " accidents will happen, children in their play will not make the best decisions." "They may push, they may shove, they may trip other children, they may fall and hurt one another inadvertently. I do know that children have been physically held and you know, they might be playing something, and they hold them prisoner." The administration was aware that "curiosity in young children regarding private parts was quite normal, but not acceptable."

¶44. It is undisputed that no teacher was present at the time of the alleged injury so a natural inference could be drawn that St. Andrew's failed in its duty to properly supervise. This Court has held that summary judgment is inappropriate where differing but reasonable inferences may be drawn from uncontradicted facts. *Delahoussaye v. Mary Mahoney's, Inc.*, 696 So. 2d 689, 691 (Miss. 1997).

¶45. The plaintiffs rely on *Garrett v. Northwest Miss. Junior College*, 674 So. 2d 1 (Miss.1996), that summary judgment was not appropriate in resolving St. Andrew's liability for its total lack of supervision. The circuit court found that the facts in *Garrett* were not similar to the facts here, in that *Garrett* involved the issue of whether a technical student of a junior college was properly instructed and supervised in the use of a piece of dangerous equipment the first time he used the equipment. *Garrett* does not in any way negate the authority and persuasiveness of the *Levandoski* case.

¶46. As persuasive as *Levandoski* is, so too is *James v. Gloversville Enlarged Sch. Dist.,* 548 N.Y.S. 2d 87, 88-89 (N.Y. App. Div. 1989), where it was found that a material issue of fact existed as to whether previous complaints about a student's aggressive misbehavior constituted notice and warning to school officials of potential for future altercations and whether assigned lunchroom aides violated rules and procedures for supervision by allegedly sitting on a bench talking to each other with their backs to children during recess, precluding summary judgment for the school district in a negligence action.

¶47. Although a board of education is not an insurer of the safety of its students, there is an obligation to supervise adequately the activities of students within its charge, and it will be held liable for a foreseeable injury proximately related to the absence of supervision. *James,* 548 N.Y.S. 2d at 88. In support of the argument that schools are not shielded from certain liability, the plaintiff in *Lang v. Bay St. Louis/Waveland Sch. Dist.,* No. 97-CA-01612-SCT*,* 1999 WL 250977 (Miss. Apr. 29, 1999), argued the law does not protect school districts of this state from an obligation to protect students from

reasonably foreseeable harm or an obligation to provide them with safe places to attend school. *Id.* at 3. The same argument can be made here.

¶48. Thus, the issue is whether the plaintiffs have sufficiently demonstrated that the cause of injury was a failure by the teacher, principal and assistant teacher to protect Nikki from a known and foreseeable source of harm. *Id.* Whether the earlier incidents of slapping, scratching, and kicking should have constituted notice and warning of the potential for future altercations are factual issues for resolution by a jury. *Id.*

¶49. Equally important is the question of whether the teacher and principal should have foreseen the possibility that the students may engage in the activity describe herein. Finally, whether the teachers violated the rules and procedures for supervision by allegedly sitting on a bench talking to each other with their backs to the children is also a triable factual issue. *Id.*

¶50. In sum, all motions for summary judgment should be viewed with great skepticism, and if the trial court is to err, it is better to err on the side of denying the motion. *Daniels v. GNB, Inc.,* 629 So. 2d 595, 599 (Miss. 1993).

¶51. St. Andrew's has relied on the fact that by having a teacher for each class of 16 children it has fulfilled its duty of providing adequate supervision. However, the adequacy of the supervision under the prevailing circumstances is an issue for jury determination. *James*, 548 N.Y.S. 2d at 88-89. Therefore, the circuit court erred in granting summary judgment on Nikki's negligent supervision claim.

### IV. WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT PUNITIVE DAMAGES WERE NOT RECOVERABLE

¶52. The plaintiffs assign as error the fact that the trial judge denied punitive damages. As a general rule, exemplary or punitive damages are "added damages" and are in addition to the actual or compensatory damages due because of an injury or wrong. *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So. 2d 226, 233 (1962). The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others. *Id.* In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. *Id.* (citing 15 Am.Jur., Damages, Sec. 265, pg 698.)

¶53. The award of punitive damages, along with the amount of such, are within the discretion of the trier of fact. *Fought v. Morris*, 543 So. 2d 167, 173 (Miss. 1989). "Nevertheless, the trial court, in determining if the issue should be submitted to the jury, must 'decide whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found either malice or gross neglect or reckless disregard.'" *Peoples Bank & Trust Co. v. Cermack*, 658 So. 2d 1352, 1361 (Miss. 1995) (quoting *Colonial Mortgage Co. v. Lee*, 525 So. 2d 804, 808 (Miss. 1988)). *See also* *Life Ins. Co. of Mississippi v. Allen*, 518 So. 2d 1189, 1193 (Miss. 1987); *Mississippi Farm Bureau Ins. Co. v. Todd*, 492 So. 2d 919, 933 (Miss.1986).

¶54. What are the facts here from which a jury could reasonably infer that the acts of St. Andrew's were so gross and reckless as to evince disregard for the rights of the others and so gross as to be equivalent to a willful wrong? Taking the strongest testimony from Nikki's affidavit, it would appear that while she was

outside several students in the kindergarten class threw her to the ground and held down her arms and legs. Her dress was pulled up, and her shorts and panties were pulled down to above her knees. Nikki's private parts were seen by the children. The children also touched her on her private parts while she was being held down. The children were told to stop but did not do so until the event occurred for a second time. This incident happened on the playground in the back under some trees. The teachers were sitting down talking and did not see the incident.

¶55. It is undisputed that the teacher in charge did not learn of the incident until a parent called her at home later in the evening on the day of the incident. On the other hand, after the teacher was notified of the incident she spoke with the children involved the next day and the class as a whole. Nikki's mother, Johnnie Dawson, was called later that night. The incident, at this point, was considered "closed" by the teacher and the administration. Nikki's parents testified in their depositions that St. Andrew's did not intentionally or willfully harm their daughter.

¶56. Under the totality of the circumstances and viewing St. Andrew's conduct in the aggregate, a reasonable trier of fact could not find either malice, gross negligence or reckless disregard. Thus, punitive damages were not warranted.

## CONCLUSION

¶57. Looking at the evidence in the light most favorable to the plaintiffs, the non-moving party, the circuit court did not err in refusing to recuse in this case under these particular facts nor in finding the parents were not foreseeable plaintiffs for recovery for emotional distress.

¶58. Additionally, the record does not show that St. Andrew's conduct was malicious or so gross as to be equivalent to a willful wrong. Therefore, the circuit court did not err in granting summary judgment on the plaintiffs claim for punitive damages. However, there is sufficient evidence to raise questions of whether Nikki received adequate supervision from St. Andrew's.

¶59. For these reasons, we affirm the circuit court's order denying the plaintiffs' motion to recuse and its summary judgment dismissing the parents' claims. We also affirm the summary judgment regarding punitive damages. However, we reverse the summary judgment on Nikki's claim for compensatory damages concerning negligent supervision, and we remand this case to the trial court for a trial on that claim.

¶60. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J. BANKS, P.J., AND DIAZ, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶61. The majority is correct to note that there are genuine issues of material fact to be resolved in this case. However, those issues of fact relate not only to the alleged negligence of the school employees, but also to any damages which may be recovered as a result thereof. Therefore, while I agree that the judge did not manifestly err in refusing to recuse himself and that the circuit court did err in granting summary judgment, I disagree with the majority's attempt to limit the jury's ability to award damages to Dorothy Nicole Summers and her parents. Accordingly, I concur in part and dissent in part.

¶62. The majority is correct in holding that genuine issues of material fact exist as to whether the cause of the injury was a failure by the teacher, principal and assistant teacher to protect the child from a known and foreseeable harm. The majority also states that the issue of whether the level of supervision was adequate under the prevailing circumstances is an issue for determination by a jury. However, since reversal of the summary judgment is required on the issues of whether there was a foreseeable harm to the child and whether there was adequate supervision under the prevailing circumstances, the issue of punitive damages must also be remanded to the circuit court to be determined by the trier of fact.

¶63. Punitive damages may not be awarded unless the plaintiff can prove by clear and convincing evidence actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or the commission of actual fraud. Miss. Code Ann. § 11-1-65(1) (Supp.1999). The majority asks "What are the facts here from which a jury could reasonably infer that the acts of St. Andrew's were so gross and reckless as to evince disregard for the rights of the others and so gross as to be equivalent to a willful wrong?" That question can only be answered by the fact finder.

¶64. However, the fact that a five-year old was thrown to the ground by her classmates, held down not once, but twice, had her panties pulled down and was fondled, **all unnoticed by teachers on duty**, implies negligence. In fact, no teacher knew of the incident until later that evening.

¶65. The majority argues that the teachers responsible for watching the children on the playground were "sitting down talking and did not see the incident." The majority seems to imply that the teacher's failure to react to the situation was excusable because they were simply unaware of it. A different view of those facts would suggest that a failure to be pro-active and actually watch the kids while they were playing is gross and reckless behavior. The fact that Nikki had been assaulted by classmates earlier that year made it even more important to watch the children.[2] As the majority stated, even the principal acknowledged that children are curious about the private parts of another. All the more reason for those on duty to know what is going on, especially behind a group of trees. St Andrew's and its teachers are on notice to give active supervision to avoid this type of occurrence particularly while on the playground. However, determining the level of any negligence is not an issue for this Court. As even the majority concedes in its opinion, summary judgment is inappropriate where differing but reasonable inferences can be drawn from uncontradicted facts. *Delahoussaye v. Mary Mahoney's, Inc.*, 696 So.2d 689, 691 (Miss. 1997). Such is the case here.

¶66. Regarding the parents' mental anguish claim, the majority concludes that there is no evidence of mental anguish and no evidence that St. Andrew's conduct reached the level of outrageous conduct necessary to establish a claim for mental anguish. As was the case in the circuit court, the majority's disposition of this issue is premature. The circuit court held that the parents did not have a direct action because willful and wanton negligence was not proven. If further facts are to be developed on remand pertaining to the child's alleged damages, it is inconsistent to bar consideration of the parents' claims for emotional distress damages. The parents urge that they are due relief because the alleged conduct on the part of St. Andrew's was a willful, wanton, malicious or intentional wrong. This is precisely what would be considered if the punitive damages issue was appropriately remanded.

¶67.   There remain genuine issues of material fact to be resolved when this case is remanded for trial. It is not the role of this Court to decide issues on their merits when the facts and record have yet to be fully developed. The majority is correct to reverse the summary judgment on the issue of negligence, but it is wrong to disallow consideration of punitive damages and to bar the parents' emotional distress claim. The

trial judge dismissed the punitive damage claim when he ruled that there was no negligence on the part of the defendants for compensatory damages. The issue is not ripe for us to decide here but only after the proof has been presented. The circuit court should be allowed to permit the development of all of the facts and consider **all** of the damages claims by Nicole and her parents. Thus, while I concur in the affirmance of the circuit court's denial of the recusal motion, I would reverse the summary judgment in its entirety and remand this case for a trial on all issues. For these reasons, I concur in part and dissent in part.

**PITTMAN, P.J., JOINS THIS OPINION.**

1. The court noted that Nikki submitted three affidavits, with each varying somewhat from the other two. Nikki's counsel represented to the court that these variations were oversights and that the subsequent affidavits were submitted to clarify or correct the oversights. St.Andrew's requested the court to make a determination as to Nikki's competency . The court assumed Nikki's competency and accepted her affidavits as competent, true testimony.

2. The trial court adopted Nikki's characterization as set forth in her affidavits: "Before the children did this to me, earlier in the school year I had told my teacher, Ms. Coker that one of my classmates had kicked me. I was also scratched in the face with a pine cone and slapped. At another time, I was spit on. I told my parents and they talked to my teacher about it. This all happened before May 13, 1996."