CARLTON, J.,
specially concurring:
¶ 22. I specially concur with the majority’s opinion in this case, and I write specially to address the material questions of fact raised herein. With respect to the negligence claims raised, the question as to whether a duty to warn arose from the relationship between the parties constitutes a question of law. See Pritchard v. Von Houten, 960 So.2d 568, 579 (¶ 27) (Miss.Ct.App.2007). Questions of law are reviewed de novo. Id. at 576 (¶ 20). However, the questions as to causation and foreseeability include material questions of fact.
¶ 23. In this case, a duty clearly arose from the relationship between Braxton, a seventeen-year-old minor, and Amanda, the associate pastor and leader of FUNA’s youth mission trip. At the very least, FUNA, by and through its employee, Amanda, bore a duty to use ordinary care to plan and supervise this international mission trip composed of church members to Costa Rica and its shores on the Pacific Ocean. As the facts of this case reflect, a duty also arose and existed to supervise Braxton on the rock formations of the Costa Rica Pacific coastline. Accordingly, I find that genuine issues of material fact exist as to whether FUNA, through its employee, Amanda, negligently failed to warn of dangerous conditions that she knew or should have known existed on the beaches of Costa Rica’s Pacific Ocean edge, and whether Amanda, as the mission-trip leader, negligently planned and supervised this international mission trip. See Garrett v. Nw. Miss. Junior Coll., 674 So.2d 1, 3 (Miss.1996).[2]
¶24. In Pritchard, 960 So.2d at 579 (¶ 27),[3] we recognized that “[a]n important component of the existence of a duty is that the injury is reasonably foreseeable.” The Pritchard court further explained:
A defendant charged with a duty to exercise ordinary care must only take *1090 reasonable measures to remove or protect against foreseeable hazards that he knows about or should know about in the exercise of due care. Such a defendant must safeguard against reasonable probabilities, and is not charged with foreseeing all occurrences, even though such occurrences are within the range of possibility. A defendant whose conduct is reasonable in light of the foreseeable risks will not be found liable for negligence.
Id. at (¶ 29) (internal citations and quotation marks omitted); see also Donald v. Amoco Prod. Co., 735 So.2d 161, 175 (¶ 48) (Miss.1999). While duty constitutes an issue of law, causation is generally a question of fact for the jury. Brown v. State Farm Fire & Cas. Co., No. 06-CV-199, 2007 WL 1657417, at *4 (S.D.Miss. June 4, 2007).
1125. In Foster ex rel. Foster v. Bass, 575 So.2d 967, 972 (Miss.1990), the supreme court stated that “in order to recover for an injury to a person or property, by reason of negligence or want of due care, there must be shown to exist some obligation or duty toward the plaintiff which the defendant has left undischarged or unfulfilled.” Issues of fact as to foreseeability and breach of duty preclude summary judgment. See Summers ex rel. Dawson v. St. Andrew’s Episcopal Sch., Inc., 759 So.2d 1203, 1214 (¶¶ 48-51) (Miss.2000) (reversing summary judgment on negligent-supervision claim because issues of fact as to foreseeability existed).
¶26. In this case, the record reflects that Amanda served as both the associate minister and youth minister at FUNA. Amanda testified that she was responsible for planning the trip to Costa Rica and that she recruited others to participate in this international mission trip. She provided that she had led youth mission trips before and had traveled with youth groups internationally before. Amanda testified that she had consulted with team leaders from another church who had traveled to Costa Rica on youth mission trips, but she admitted to failing to check with the United States State Department online travel advisory warnings, or any other travel advisories, as to any unsafe beach, tide, or surf conditions in Costa Rica. She also admitted to not instructing or warning Braxton or any other youth about beach safety or about the dangerous surf or riptides of Coast Rica’s Pacific Coast.[4]
¶27. Geographically, Costa Rica sits between the Carribean Sea and the Pacific Ocean. The record reflects that the youth group was on the Pacific Ocean side of Costa Rica, and that Braxton and other members of the mission team began climbing on volcanic-rock formations that were separated from the shore by shallow water. Braxton and Josh climbed on and over the rock formation to the Pacific Ocean side, and then they climbed down by the Pacific Ocean’s edge, where they saw some crabs. While watching the crabs, waves from the Pacific Ocean knocked Braxton and Josh off of the rock formation, into the ocean, and into the current of the dangerous riptides. Josh explained that the waves knocked them into different currents.
¶28. Regarding the traumatic events, Josh testified that he was standing on the rock formation with Braxton when a wave knocked them off of the rock and into the water. Josh testified that two more waves hit them as they tided to climb back onto the rock. Josh recalled getting pushed back under water after the second wave hit. When he came back to the surface, Braxton was grabbing his back, and the water had pushed the two of them close *1091 enough to the rock that they had fallen off of that they could try to climb back up. When the water from the wave subsided, they slid back down into the water, and Josh and Braxton then became separated by different currents. Josh testified that he was pushed into a current separate from Braxton, taking them in different directions. Josh recalled looking back and watching Braxton climb onto a smaller rock. When a third wave hit them, he and Braxton went under water again, and when he came back up, he could no longer see Braxton. Josh testified that prior to the trip, no one warned him of unsafe tide, surf, waves, or other conditions existing on the Pacific Ocean coast of Costa Rica. He also testified that he brought a swim suit with him on the trip.
¶29. The record contains pictures of the location where Braxton was knocked off of the volcanic-rock formation and into the Pacific Ocean. Josh described the top of the rock that he and Braxton climbed on as twenty feet high above the water, and stated that he and Braxton were on the ocean side of the formation, ten feet from the top, when the wave swept them off. Josh provided that water completely surrounded the rock on all sides, separating the rock from dry sand by approximately thirty to forty feet of ankle-deep water on one side. Josh explained that the water was deeper on the ocean side of the rock where he and Braxton were knocked in the water.
¶30. Josh testified that he recalled Adam, a grown man who weighed approximately 340 pounds, slipping into the water before the wave hit him and Braxton. Adam testified that he was knocked down by a seven-to-eight-foot wave. Josh recalled that Adam was swept into the water about fifteen to twenty minutes before a different wave swept him and Braxton into the ocean.
¶ 31. The record reflects existing material questions of fact as to whether the church, through its mission-trip leader and employee, Amanda, negligently breached its duty to Braxton, a minor, to plan and supervise this international mission trip and to warn Braxton of the dangerous beach and surf conditions on Costa Rica’s Pacific coast. Therefore, the trial court erred in granting summary judgment since triable issues of material fact exist in this case. In planning and supervising this trip, a duty existed to warn of the hidden dangers and perils not in plain view that FUÑA and its mission trip leader, Amanda, knew, or should have known, existed. Additionally, once the tide rose and the large waves knocked the adults down, Amanda bore a duty to supervise and warn Braxton of the dangerous conditions.
¶ 32. The trial court’s decision failed to address the Youth Medical/Parental Consent form waivers or their applicability in this case. However, the enforceability of the waivers was argued on appeal, and I write briefly to address this issue. Jurisprudence reflects that the preinjury waivers herein are unenforceable with respect to the negligence claims for 'wrongful death raised in this case against the church for its negligence in planning, supervising, and failing to warn of the dangerous beach and ocean conditions on this mission trip to Costa Rica. See Ghane v. Mid-S. Inst. of Self Def. Shooting, Inc., 137 So.3d 212, 221-22 (¶ 23) (Miss.2014). The language in the waivers in this case applied to church-mission-related activities and related risks. The waivers contained no language regarding the liability or risks of recreational activities such as hiking, swimming, or rock climbing on Costa Rica’s beaches on the Pacific Ocean or the risks of the dangerous riptides and dangerous ocean surf. Public policy prohibits the use of preinjury waivers of liability for *1092 personal injury due to future acts of a defendant’s own negligence. See Turnbough v. Ladner, 754 So.2d 467, 469 (¶ 8) (Miss.1999) (waiver unenforceable where it did not express intent of student to accept any heightened exposure to injury caused by malfeasance of instructor’s failure to follow safety guidelines); Rice v. Am. Skiing Co., No. CIV.A.CV-99-06, 2000 WL 33677027, at *2 (Me.Super.Ct. May 8, 2000). For a waiver to be valid and enforceable, it must not be ambiguous and it must be specific in wording as to the liability. See Turnbough, 754 So.2d at 469 (¶8). Waivers will be strictly construed against the defendant. Id. When a waiver contains ambiguous language, it cannot be construed as a waiver of liability for injuries that result from the negligence of the defendant. Id. at 470 (¶ 9).
¶33. As stated, the evidence in the record reflects material questions of fact exist as to foreseeability and breach of duty for negligent failure to plan and supervise the mission trip and failure to warn of the dangerous beach and surf conditions of Costa Rica’s Pacific coast.[5] Therefore, summary judgment must be reversed and the ease remanded.
LEE, C.J., BARNES AND FAIR, JJ„ JOIN THIS OPINION. WILSON, J., JOINS THIS OPINION IN PART.

. In Garrett, 674 So.2d at 3, the Mississippi Supreme Court relied upon Roberts v. Robertson County Board of Education, 692 S.W.2d 863, 870 (Tenn.Ct.App.1985), where the Tennessee Court of Appeals imposed a duty of care upon a high-school vocational teacher "to take those precautions that any ordinarily reasonable and prudent person would take to protect his shop students from the unreasonable risk of injury."

. The court in Pritchard, 960 So.2d at 579 (¶ 27), found that a vocational teacher "has the duty to take those precautions that any ordinary reasonable and prudent person would take to protect his shop students from the unreasonable risk of injury.”

. Compare Rygg v. Cty. of Maui, 98 F.Supp.2d 1129, 1132-33 (D.Haw.1999).

. Compare Diamond Crystal Salt Co. v. Thielman, 395 F.2d 62, 65 (5th Cir.1968) (plaintiff was injured on a guided tour of a mine where “the danger was not obvious, and if the dangerous condition had in fact been observed it would not have been appreciated fay persons of ordinary understanding”); see also Martinez v. United States, 780 F.2d 525, 527 (5th Cir.1986) (duty to warn at shallow swimming area of federal park); Wyatt v. Rosewood Hotels & Resorts LLC, No. 2004-12, 2005 WL 1706134, at *4-5 (D.V.I. July 19, 2005).