Jean S. MOORE, individually and as conservator for James Steven Moore, a/k/a Jim S. Moore, James Moore, individually, Mike Moore, individually, and Beckett Moore Short, individually, Plaintiffs,

v.

The KROGER COMPANY, Claude Brown Jr., Graves Logging, Inc., and Larry E. McElhenney, Defendants.

Civ. A. No. WC 90–126–D–D.

United States District Court, N.D. Mississippi, W.D.

June 29, 1992.

John Booth Farese, Ashland, Miss., George E. Dent, Tupelo, Miss., for plaintiffs.

Steve M. Corban, Tupelo, Miss., for defendant, Kroger Co. and Claude Brown, Jr.

John W. Crowell, Columbus, Miss., for defendant, Graves Logging, Inc. and Larry McElhenney.

Ralph M. Dean, Asst. U.S. Atty., Oxford, Miss., for intervenor, U.S. Dept. of Agriculture.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The case *sub judice* contains several matters requiring the attention of the court before trial.[1] These matters include defendants' motion for summary judgment as to the claims of each of the individual plaintiffs, defendants' motion to strike plaintiffs' claim for hedonic damages or, in the alternative, to strike the testimony of Stan Smith, and defendants' motion for separate trials. Two minor, tangential issues are also before the court and may be disposed of quickly here. These are plaintiffs' motion to amend their response opposing summary judgment, which is hereby granted,[2] and plaintiffs' motion for oral argument on hedonic damages and separate trials, which is hereby denied. After a brief recitation of the facts of this case, the court will consider the remaining issues below.

## FACTUAL BACKGROUND

Viewed in a light most favorable to the plaintiffs, the facts are as follows. James Steven Moore, a 27–year–old resident of Michigan, had temporarily moved to Mississippi where he held a job with the United States Department of Agriculture. While on the job, Moore was driving a pickup truck south on Highway 15 in Pontotoc County, Mississippi, on September 24, 1990. He had one passenger in the vehicle. Traveling north on Highway 15 at approximately the same time and place was an eighteen-wheel truck maintained by the Kroger Company and driven by Claude Brown, Jr. A second truck, maintained by Graves Logging, Inc., and driven by Larry McElhenney, was traveling immediately behind the Kroger truck.

The accident which is the subject of this lawsuit occurred when a log truck, which was being followed by a silver, pickup truck and the Kroger and Graves vehicles, slowed down to make a turn off the highway, causing the trailing Kroger truck to brake immediately. John Estes, a passenger in the Moore vehicle, testified that he could see the Kroger truck "bagging down" and the driver "standing erect on his brakes" in an effort to stop. Although Estes did not remember seeing the Graves vehicle, the accident occurred when McEl-

---

1. Trial of this cause is currently set for July 20, 1992, in Oxford, Mississippi.

2. Accordingly, in drafting this opinion, the court has considered plaintiffs' most recent, amended response to the motion for summary judgment.

henney, trailing the line of halting vehicles in the Graves truck, left the northbound lane in an attempt to pass the Kroger truck. The Graves truck slid into the back of the Kroger truck and jackknifed, causing a crash with the oncoming Moore vehicle. Estes testified that the owner of Stegall Ford Company, a place where he and Moore had stopped before the accident, told him that a female driving from Okolona to Pontotoc near the time of the accident reported that both trucks had passed her, both traveling over the speed limit.

Moore has been in a coma since the accident and is not expected to recover. He is not married and has no children. Jean Moore, his mother, was appointed as his conservator. Moore was treated at hospitals in Pontotoc and Tupelo before being transferred to New Medico, a special head injury institution in Michigan. Although the United States has paid medical benefits as Moore's employer, his parents have absorbed significant expenses, a deposition from Moore's sister, Beckett Moore Short, states. These costs include monetary expenses due to travel to and from the New Medico center, treatment for depression, phone calls to family members and medical necessities for their son. Mrs. Moore and the victim's father, James Moore, have also incurred lost wages from their respective jobs due to the inordinate amount of time they have had to devote to their son. Beckett Moore and Mike Moore, Moore's brother, have similarly incurred expenses caused by travel and other duties related to the accident, according to the complaint. All four family members seek recovery for these expenses as well as damages for the loss of Moore's love, companionship and society and the diminished pleasure of their own lives due to his physical condition.

## DISCUSSION

### 1. Motion for Summary Judgment

■ A district court may grant summary judgment where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Numerous, immaterial facts may be controverted, but only those that "affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case, defendants' motion for summary judgment is more properly characterized as a motion for partial summary judgment; it is undisputed that James Steven Moore has a personal claim against the defendants, so that the claim by Jean Moore, as his conservator, survives. However, the individual claims of each of the plaintiffs, taking all their proffered facts as true, cannot survive under the present status of Mississippi law. *Erie*-bound to follow this law, the court is of the opinion that this suit must be narrowed even though the shared tragedy and involvement of this family has most certainly been great.

The parties' briefs primarily focus on two cases—*Entex, Inc. v. McGuire*, 414 So.2d 437 (Miss.1982), and *Campbell v. Beverly Enterprises*, 724 F.Supp. 439 (S.D.Miss.1989). Both cases concern the permissible reach of emotional distress damages for plaintiffs who, although not the immediate sufferers of a personal injury tragedy, sustained anxiety either as immediate bystanders or after-the-fact observers of the sufferings of a close family member. In *Entex*, the plaintiff, Ray McGuire, literally pulled his wife from a burning home after an explosion which practically blew away one side of their house. *Entex*, 414 So.2d at 437. The record, which included medical evidence, showed that the explosions and fire, coupled with the near loss of his wife, was a severely traumatic experience for McGuire. Doctors testified that the incident exacerbated McGuire's previous sufferings with Parkinson's Disease, created anxiety and depressive neurosis and fostered a lack of sleep and nightmares. Citing the well-known, California case of *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), the Mississippi court further aban-

doned the traditional impact doctrine [3] and held that McGuire's claim for damages was properly submitted to the jury. *Entex,* 414 So.2d at 444. The court set forth the following *Dillon* factors as important in determining whether a defendant should reasonably foresee injury to a plaintiff, thereby owing a duty of care:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Id.* (citing *Dillon,* 441 P.2d at 920).

Seven years later, a federal district judge for the Southern District of Mississippi considered the *Entex* holding in conjunction with the mental distress claims brought by the children of a deceased nursing home patient. *See Campbell,* 724 F.Supp. at 440. The plaintiffs in that case sought to recover damages for the mental distress they allegedly suffered after witnessing the results of the mistreatment of their mother. The court found that the family members could not recover mental distress damages under the circumstances presented there. However, in a discussion leading to this holding, the *Campbell* court traced the law in Mississippi concerning mental distress damages in the absence of physical manifestation. The court first discussed the law with respect to the immediate victim, who, depending on the maliciousness and gross nature of the negligence, could seek recovery despite the absence of actual physical injury. The court then turned to third-party witnesses of the harm and stated that these persons could not recover in the absence of direct physical injury or

threatened violent physical injury to their family member. *Id.* at 442.

Plaintiffs insist that *Campbell* expands *Entex* by allowing family members to recover for mental distress even if they are outside the zone of danger and outside the range of immediate sensory perception where the negligence is gross or wanton, as is arguably the case here. In other words, as the severity of the negligence increases, so should the scope of foreseeable plaintiffs. Although this argument offers sympathetic appeal, it is an inaccurate characterization of Mississippi law. First, *Campbell* is one interpretation of what the Mississippi Supreme Court would do if faced with grieving, family-member plaintiffs outside the zone of danger. The case merely assumed without deciding that third-party plaintiffs could recover without witnessing the actual event. *See id.* at 441.[4] An earlier case from this court views the right of recovery for such third-party plaintiffs much more restrictively. *See Johnson v. Ford Motor Co.,* 354 F.Supp. 645, 650 (N.D.Miss.1973) (Mississippi Supreme Court would hold that the mental anguish suffered by plaintiff on account of injuries to his son is not a proper element of damages). Second, plaintiffs' broad reading of *Campbell* misconstrues the separate discussions in that opinion. As noted above, *Campbell*'s discussion of grossly negligent behavior was in conjunction with the emotional distress of the immediate victim. The case did not discuss mental distress recovery for third parties until a separate section of the opinion, wherein the court found that the children's actions would not be permitted. Finally, a plain reading of the *Entex* case cautions against recovery for the family members here. These plaintiffs were not located near the scene of the accident, nor was their shock caused by "contemporaneous observance of the accident." While the trend may lie in the direction of allowing emotional distress

---

**3.** As noted by the Mississippi Supreme Court in *Entex,* this doctrine was initially abandoned in *First National Bank v. Langley,* 314 So.2d 324, 339 (Miss.1975).

**4.** This assumption allowed the *Campbell* court to reach its ultimate holding, which was that the plaintiffs could not recover in any event because no physical injury had been charged to their mother. *See id.*

recovery in the absence of physical injury where a close family relationship exists, in this court's opinion, the range of foreseeable plaintiffs does not include after-the-fact witnesses of the results of an accident as opposed to witnesses of the accident itself.[5]

■ Aside from seeking emotional distress damages, the individual plaintiffs seek compensatory damages for lost work time, travel and related expenses. The conservatorship clearly has a claim for reasonable damages and expenses proximately caused by the accident and may, depending on the proof, have a claim for punitive damages. The range of damages permissible to the conservatorship is an issue that can be explored in more detail at trial. However, Moore's brother, sister and parents do not have their own, separate right of action against the alleged tortfeasors. Because these family members are not within the group of persons who have a claim for loss of consortium and not otherwise dependent upon Moore,[6] their attentiveness and sacrifices are in the nature of noncompensable familial obligations rather than compensable legal ones.

■ An issue alluded to in the briefs is whether these family members may recover damages similar to those afforded to beneficiaries under the wrongful death statute[7] on the grounds that this case has arguably similar consequences. This argument, sometimes termed "loss of filial consortium," has received an increasingly favorable response, especially where, as here, a catastrophic injury has severely limited a son or daughter's companionship and society. *See generally* Todd R. Smyth, J.D., *Loss of Filial Consortium*, 54 A.L.R.4th (1987).[8] At least until 1972, however, Mississippi declined to recognize a parent's right to damages for loss of a child's companionship and society. *See Butler v. Chrestman*, 264 So.2d 812 (Miss.1972) (jury instruction allowing father damages for loss of society of his daughter due to automobile accident was in error). This court's research reveals no Mississippi case on point since that time, so that *Butler* appears to be the existing law. Moreover, while the grief of family members favors the creation of such an action, strong arguments also counsel against it such as the difficulty of measuring damages and the dangers of double recovery. *See* 54 A.L.R.4th 112, 119. This court is of the opinion that because Moore's personal injury claim survives through his conservator, it must remain a personal injury claim despite the severity of the injury. To allow aggrieved plaintiffs to borrow from wrongful death and personal injury claims depending on the severity of the case would foster a cumbersome system, difficult to apply in later cases and as yet unrecognized by Mississippi law. For all of the above reasons, partial summary judgment will be granted as to the claims of the individual plaintiffs and the individual plaintiffs will be dismissed. However, the

---

**5.** It is unlikely that even the California courts would expand *Dillon,* already a controversial case, to allow recovery for third-party non-witnesses. *See, e.g., Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989) (mother who did not witness accident in which automobile struck and injured child could not recover damages from driver for emotional distress).

**6.** Had Moore been married, his wife would have a cause of action for loss of consortium. *See* Miss.Code Ann. § 93–3–1 (1973). Additionally, parents have an equal right of action for the value of the lost services of a child until the age of majority. *See Wright v. Standard Oil Co., Inc.,* 470 F.2d 1280, 1286–87 (1972).

**7.** Miss.Code Ann. § 11–7–13, entitled "Actions for injuries producing death," provides that a

suit for damages may be brought "by the parent for the death of a child," "by a sister for the death of a brother," and by "a brother for the death of a brother." The statute goes on to provide:

> [I]f the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death.

Miss.Code Ann. § 11–7–13 (Supp.1991).

**8.** A case supporting such a cause of action, cited by plaintiffs in their brief, is *Masaki v. General Motors Corp.,* 71 Haw. 1, 780 P.2d 566 (1989) (by borrowing from wrongful death statute, court held that parents of 28–year–old could recover for filial loss of consortium of their son in products liability case where he was rendered a quadriplegic).

claim of Jean Moore as conservator will go forward.

### 2. Motion to Strike the Hedonic Damages Claim [9]

In Mississippi, "damages for personal injury cannot be determined by any fixed rule. The amount of the award rests largely within the discretion and judgment of the jury ... [and] each suit ... must be decided by the facts shown in that particular case." *Kinnard v. Martin*, 223 So.2d 300, 302–03 (Miss.1969) (citations omitted). At the same time, the jury's verdict must be reasonable. Variables to be considered include past, present and future physical pain and suffering and resulting mental anguish; prior and future reasonable medical expenses; the duration of any future disability; and the effect, if any, the disability will have on plaintiff's earning capacity and his life. *Id.* at 303. *See also Woods v. Nichols*, 416 So.2d 659, 671 (Miss. 1982); Miss. Model Jury Instr. 20.14 (1977).

Although the appropriateness of a jury verdict turns on the facts of each case, the Mississippi Supreme Court has not yet embraced hedonic damages, more commonly known as damages for the "loss of enjoyment of life." Likewise, this court has not yet considered the issue of hedonic damages in conjunction with a personal injury claim as opposed to a wrongful death claim. However, in *Buckhalter v. Burlington Northern Railroad*, No. EC 90–139–D–D, 1992 WL 236676 (N.D.Miss. March 23, 1992), the undersigned considered the primary case relied upon by the plaintiffs in this case—*Jones v. Schaffer*, 573 So.2d 740, 744 (Miss.1990)—and found that Mississippi law has not recognized hedonic damages in a wrongful death action despite a concurring opinion by Justice Robertson favoring such damages.[10] In dismissing the hedonic damages claim, this court noted that Mississippi law limits recovery in wrongful death cases to four general areas, *see McGowan v. Estate of Wright*, 524 So.2d 308, 311 (Miss.1988),[11] none of which refer to loss of the enjoyment of life. However, related factors that a jury *may* consider in a wrongful death case include the loss of the decedent's companionship and society and the pain and suffering of the decedent.

*McGowan* is inapplicable here because this is not a wrongful death case. Nevertheless, concerns about double damage awards attend both types of cases. As has been noted, a plaintiff in a personal injury action may recover for past, present and future physical pain and suffering as well as resulting mental anguish where proven by a preponderance of the evidence. Moore may also recover for the duration of the illness and the effect it will have on his "health, physical ability, age and earning power." Miss. Model Jury Instr. 20.14. In this court's opinion, these damages are highly similar to, if not synonymous with, "damages for the loss of enjoyment of life." To allow *both* forms of damages would encourage duplicate awards and juror confusion. *Erie*-bound to follow the current state of Mississippi law, this court is of the opinion that Mississippi does not recognize a separate claim for hedonic damages in a personal injury case over and

---

**9.** Plaintiffs argue that defendants' motion to strike the hedonic damages claim merely reiterates the arguments made in their motion for summary judgment. However, the court is of the opinion that the two motions are not completely synonymous. A letter from proposed expert Stan Smith to plaintiffs' attorney indicates that Smith is prepared to testify on the loss of enjoyment of Moore's own life as well as the reduction in the quality of the lives of his immediate family. Having already determined that the individual plaintiffs should be dismissed from the lawsuit, the court now considers whether Moore, through his conservator, may recover hedonic damages.

**10.** Footnote 2 of the majority opinion in *Jones* states that although various legal authorities have written on the theory of hedonic damages, "this opinion does not address the issue." *Id.* at 743 n. 2.

**11.** These four general areas are:

(1) the present net cash value of the life expectancy of the deceased, (2) the loss of the companionship and society of the decedent, (3) the pain and suffering of the decedent between the time of injury and death, and (4) punitive damages.

*Id.* (citations omitted).

above the right to recover for physical pain and mental anguish.[12]

 Having held that hedonic damages are not recoverable as a separate form of damages, the court nevertheless declines to limit the testimony of Smith, Moore's proposed expert on such damages, until the substance of his testimony can be more fully explored at trial. In the past, the undersigned has rejected speculative figures that attempt to quantify an injured person's emotions when a jury of laypersons is equally equipped to make the determination. *See Buckhalter, supra. See also In Re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233 (5th Cir. 1986) ("the trial judge ought to insist that the expert bring to the jury more than the lawyer can offer in argument"). However, in this case, the exhibits only generally set forth Smith's proposed testimony. The possibility exists that he may testify on matters helpful to the trier of fact in traditionally recognized areas. Accordingly, Smith's testimony will be considered at trial for its evidentiary value, helpfulness and prejudicial effect under Federal Rules of Evidence 702, 703 and 403. If confusing, unhelpful or prejudicial, it will be excluded.

### 3. Motion for Separate Trials

 Defendants have moved for a separate trial on the issue of damages. The possibility of prejudice or bias in this case does not outweigh the convenience and interest in having this entire matter resolved in one proceeding. The court finds that separate trials will not be "conducive to expedition and economy," Fed.R.Civ.P. 42(b), and therefore, exercises its discretion not to order separate trials.

An order in accordance with this memorandum opinion will be entered this day.

---

**12.** In other words, loss of enjoyment of life may not be claimed as a separate element of damages in a personal injury case, but may be treated as a factor in determining damages in general or those for pain and suffering.