# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-01291-SCT

*ENTERGY MISSISSIPPI, INC.*

*v.*

*MARY BETHANNE ACEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2013 |
| TRIAL JUDGE: | HON. JOHNNIE E. WALLS, JR. |
| TRIAL COURT ATTORNEYS: | JOHN H. DUNBAR |
| | JAMES W. SNIDER, JR |
| | FRED M. RIDOLPHI, JR. |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN H. DUNBAR |
| | JAMES W. SNIDER, JR. |
| ATTORNEYS FOR APPELLEE: | CHARLES BUCKLEY GRAVES, JR. |
| | FRED M. RIDOLPHI, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 10/23/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    One afternoon in Tunica County, Mississippi, A.A., a minor, was electrocuted while playing on the farmland of David and Sherry Melton. Riley Berry, who worked for the Meltons, had parked a cotton picker under an allegedly sagging power line, which was owned by Entergy Mississippi, Inc. Ultimately, A.A. climbed onto the cotton picker, touched the power line, and was electrocuted. Berry's deposition provides that he and his sons were unaware that A.A. and the Meltons' daughter were playing nearby. One of Berry's sons saw

a flash out of the corner of his eye, while the men were working on their vehicles. Berry stated that they immediately began running in the direction of the flash and discovered A.A. on top of the cotton picker. Berry's son was able to move A.A. and hand her to Berry, who held A.A. until emergency medical responders arrived.

¶2. At the time of the accident, A.A.'s mother, Mary Bethanne Acey, was en route to Moon Lake, in Coahoma County, Mississippi, with her son and Charles Graves. A Tunica County 911 dispatcher called Graves to inform him of the accident. Graves immediately turned the car around to proceed to the Meltons' home. Acey then spoke with the dispatcher, who explained the gravity of the situation to Acey and informed her that A.A. had been "shocked." Acey arrived at the accident scene and saw her daughter in Berry's arms. Acey's affidavit explains that she observed smoke coming from her daughter's skin, skin flaking and turning gray, fingers missing and bones exposed, and she could smell the odor of burning flesh.

¶3. Emergency medical responders arrived shortly after Acey's arrival. A.A. suffered severe burns to both of her arms and her hip. A.A. subsequently was airlifted to Le Bonheur Children's Hospital in Memphis, Tennessee, and was later transferred to Shriners Hospitals for Children in Cincinnati, Ohio, which specializes in treating burn patients.

¶4. Thereafter, Acey commenced legal action on behalf of A.A., and individually, against Entergy, David and Sherry Melton, Melton Farms, Mary Mac, Inc., and Norfleet Investments, LP ("Defendants"). Defendants settled all claims on behalf of A.A. Regarding Acey's individual bystander claims for emotional distress, Entergy moved for summary judgment and moved to strike the affidavits of Acey and Dr. William Hickerson. The trial

2

court subsequently denied each motion. According to the trial court, based on the nature of A.A.'s injuries, this case "cries out for the expansion of" the factors provided by the California Supreme Court in "*Dillon* [*v. Legg*, 68 Cal. 2d 728, 740-41, 69 Cal. Rptr. 72, 81, 441 P. 2d 912, 920 (Cal. 1968)], adopted by this Court in *Entex, Inc. v. McGuire*, 414 So. 2d 437, 444 (Miss. 1982). Thereafter, Entergy was granted interlocutory appeal by this Court on the following issues:

> I.   **Whether the trial court erred in denying Entergy's Motion for Summary Judgment on Plaintiff's bystander claim for emotional distress.**

> II.  **Whether the trial court erred in denying Entergy's Motion to Strike the Affidavit of Dr. William Hickerson.**

> III. **Whether the trial court erred in denying Entergy's Motion to Strike the Affidavit of Mary Bethanne Acey**.

¶5. Because this Court finds that Entergy's motion for summary judgment should have been granted, we will discuss the merits of only Issue I.

## STANDARD OF REVIEW

¶6. We review the denial of summary judgment de novo and consider all evidence before this Court. *Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 663 (Miss. 2002). The evidence is examined in the light most favorable to the nonmoving party. *Id*. The movant is entitled to judgment as a matter of law, having summary judgment entered in its favor, if there is no genuine issue of material fact. *Id*.

## ANALYSIS

> I.   **Whether the trial court erred in denying Entergy's Motion for Summary Judgment on Plaintiff's bystander claim for emotional distress**.

3

¶7.    As both parties point out, Acey's bystander claim for emotional distress is subject to the test provided by this Court in *Entex*, where this Court adopted the test established by the California Supreme Court in *Dillon. Entex*, 414 So. 2d at 444. *Dillon* is the seminal case which instituted the bystander theory of recovery, by allowing a plaintiff to recover for emotional distress after witnessing her child's death, based on the theory that liability should turn not on the risk of physical injury to the plaintiff (the "impact doctrine"), but on foreseeability of emotional harm to the mother. *Dillon*, 441 P.2d at 920.

¶8.    Briefly, by way of background, courts originally were reluctant to allow any recovery for intangible harms such as fright or emotional distress resulting from negligent conduct. *See* Prosser and Keeton, *The Law of Torts* §54, 360 (5th ed. 1984). Later, plaintiffs were allowed to recover for the emotional distress occasioned by the fear for their own safety, but only when accompanied by physical impact. Prosser and Keeton, *supra* § 54, 363-64. The "impact doctrine" later became regarded as inherently arbitrary because of the apparent discontinuity between the rule's scope and underlying purpose. As one commentator observed, "a near miss may be as frightening as a direct hit." Richard N. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm–A Comment on the Nature of Arbitrary Rules*, 34 U. Fla. L. Rev. 477, 488 (1982). The "impact doctrine" eventually was replaced by a rule allowing recovery for the emotional distress resulting from threats to the plaintiff's physical safety, regardless of physical impact, if the plaintiff was within the "zone of physical impact or danger." *Thing v. La Chusa*, 771 P.2d 814, 832 (Cal. 1989) (Kaufman, J., specially concurring).

¶9.     In *First National Bank v. Langley*, 314 So. 2d 324 (Miss. 1975), this Court abandoned the "impact doctrine." We held that "genuine cases of injury growing out of negligent acts of another–which are reasonably foreseeable as in other negligent cases–will not be dismissed simply because there was no trauma nor impact on the body of the injured claimant." *Id*. at 339.  Notably, *Langley* was not a bystander case.  Rather, the plaintiff there was the person upon whom the negligent conduct was inflicted. *Id*. at 325.  Because *Langley* was not a bystander case, *Langley* made no mention of the "zone of danger" rule adopted by a majority of jurisdictions after they abandoned the "impact doctrine."

¶10.    Significantly, *Dillon* rejected the "zone of danger" rule, finding it "hopeless[ly] artificial[]." *Dillon*, 441 P.2d at 915.  In *Dillon*, the plaintiff's daughter was struck and killed by an automobile. *Id*. at 914.  The plaintiff witnessed the accident, but from a location where the plaintiff herself was not in physical danger. *Id*. at 915.  The *Dillon* Court reasoned that the "zone of danger" concept inevitably collapses under similar reasons for rejecting the "impact rule," because "the only reason for the requirement of presence in that zone lies in the fact that one within it will fear the danger of [i]mpact." *Id*.

¶11.    Finding *Dillon* persuasive, *Entex* set forth the following factors, taken verbatim from *Dillon*, that must be considered when determining whether a bystander may recover for emotional-distress damages:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

5

***Entex***, 414 So. 2d at 444 (citing ***Dillon***, 441 P.2d at 920). In ***Entex***, this Court made no mention of the "zone of danger" rule. The ***Entex*** Court simply noted that ***Langley*** had abandoned the "impact doctrine" and found ***Dillon***'s bystander rule persuasive.

¶12.   Here, because Acey undisputably fails to meet the first two ***Dillon*** or ***Entex*** factors, she does not qualify for emotional-distress recovery under Mississippi bystander law. Inexplicably, the dissent finds these two factors neutral. They are not. And, as will be explained, not even under California's bystander law would Acey's bystander claim prevail under these two factors. Contrary to the dissent's understanding, the ***Dillon*** factors–under present California law–are not merely guidelines that should be "take[n] into account"[1] in determining whether a plaintiff is a foreseeable victim of the defendant's negligence; they indeed are matter-of-law prerequisites that a claimant must meet. *See **Thing v. La Chusa***, 771 P.2d 814, 830 (Cal. 1989); *see also **Bird v. Saenz***, 51 P.3d 324, 327 (Ca. 2002) (noting that ***La Chusa*** made the ***Dillon*** factors *mandatory requirements* that bystander claims for emotional distress must satisfy to be accepted as valid) (emphasis added).

¶13.   Further, there are numerous problems with the dissent's rationale, which we will point out because, if it were to be applied in this state, Mississippi's bystander law would no doubt result in infinite liability in almost every negligence action. *See, e.g.*, ***Dillon***, 441 P.2d at 919 ("In order to limit the otherwise potential infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable.").

---

[1] ***Entex*** incorporated language from ***Dillon*** with no discussion as to why it found the case persuasive. ***Entex***, 414 So. 2d at 444.

6

¶14. The first problem with the dissent's rationale is its sole focus on the fact that Acey witnessed her daughter's injury, but not the accident itself. This goes squarely against both *Dillon*'s and *Entex*'s second foreseeability factor, which inquires whether the mental/emotional shock "resulted from the sensory and contemporaneous observance of the *accident*, as contrasted with learning of the *accident* from others after its occurrence." *Entex*, 414 So. 2d at 444 (emphasis added). Every parent will witness the result(s) of his or her child's accident, but *Dillon* and *Entex* limited the range of foreseeable plaintiffs to those who sensorily or contemporaneously observed the accident.

¶15. Here, the record evidence undisputably shows that Acey did not witness the accident. Rather, Acey learned of the accident from her son, who learned of the accident from a 911 dispatcher. This circumstance raises numerous questions that the dissent fails to take into consideration. Because Acey was not present at the scene of the accident when the accident occurred, did anyone owe Acey a duty not to allow her onto the premises after she learned of the accident in order to prevent the mental/emotional distress Acey claims resulted from witnessing her daughter's injuries? Likewise, did anyone owe Acey a duty not to inform her of the accident? Or did Acey owe a duty to herself not to go to her daughter?

¶16. These, of course, are inane questions from a common-sense standpoint. But they are very real inquiries that must be considered with regard to the degree of Entergy's foreseeability–the cornerstone of a defendant's duty and liability. Is this for the factfinder to resolve, or is it a legal question reserved for the court? Assuming the former, what type of evidence must be put before the factfinder to allow the factfinder to determine foreseeability?

7

¶17.    In *La Chusa*, 771 P.2d 814, 819 (Ca. 1989), the California Supreme Court examined these types of rhetorical, legal questions and acknowledged that subsequent interpretation of *Dillon*'s guidelines by California courts had produced arbitrary and conflicting results and "ever widening circles of liability."[2]  The *La Chusa* Court corrected course.  In place of *Dillon*'s "nonexclusive" guidelines, the *La Chusa* Court made the *Dillon* factors mandatory requirements that bystander claims for emotional distress must satisfy to be accepted as valid. Specifically, *La Chusa* held "that a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress–a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances."  In applying these requirements to the facts before it, the *La Chusa* Court held that, as a matter of law, the plaintiff/mother could not state a claim for negligent infliction of emotional distress.  The plaintiff mother had been nearby when the defendant's automobile struck and injured her child, but the mother had not seen and heard the accident. The mother, like Acey, became aware of the accident only when someone told her it had occurred, and the mother rushed to the scene and saw her child lying injured and unconscious

---

[2] The special concurrence in *La Chusa* noted that a majority of jurisdictions have rejected bystander liability in favor of the zone-of-danger rule, for the reason that "*Dillon*'s confident prediction that future courts would be able to fix just and sensible boundaries on bystander liability has been found to be wholly illusory–both in theory and in practice." *La Chusa*, 771 P.2d at 833 (Kaufman, J., specially concurring).

8

on the road.  The ***La Chusa*** Court found that, under these facts, the mother could not satisfy the requirement of having been present at the scene of the injury-producing event at the time it occurred and of having been aware that it was causing injury to the victim.  The ***La Chusa*** Court reinforced its conclusion by disapproving the suggestion in prior California cases (proceeding on rationale similar to the dissent here) that a negligent actor is liable to all persons "who may have suffered emotional distress on viewing or learning about the injurious consequences of his conduct" rather than on viewing the injury-producing event itself.  ***Id***. at 830.

¶18.    A California case noted by the ***La Chusa*** Court is ***Hathaway v. Superior Court***, 112 Cal. App. 3d 728, 169 Cal. Rptr. 435 (1980), which addressed a very similar type claim as the one here before us.  In ***Hathaway***, parents alleged a cause of action for negligent infliction of emotional distress for their son's death.  ***Hathaway***, 112 Cal. App. 3d at 730. While parents were at their inlaws' residence, their son was playing outside and was electrocuted by an evaporator cooler just installed outside the inlaws' home.  ***Id***.  Another child had come into the home and told the parents their son was hurt.  ***Id***. at 731.  The parents immediately went outside, saw their son lying in a puddle of water, and watched efforts to save the boy's life.  ***Id***.  The trial court denied the parents' claim under ***Dillon***'s forseeability standard, because when the parents arrived outside approximately one minute after the event, the event which had constituted the accident had ended.  The Court of Appeal, Fifth District of California, affirmed the trial court's dismissal because the evidence was uncontradicted that the plaintiffs did not sensorily perceive the injury-causing event, but saw only the results after the accident was over.  ***Id***. at 736.

¶19. Here, as Entergy asserts, Mississippi law has been consistent regarding bystander recovery for emotional-distress damages. No case from either this Court or a federal court construes or guesses Mississippi substantive law and sustains a cause of action by a third-party plaintiff against an alleged tortfeasor on the theory of bystander recovery, where the plaintiff was not present at the time of the accident and learned of the accident only after its occurrence. *See **Miss. State Fed'n of Colored Women's Club Housing for Elderly in Clinton, Inc. v. L.R.**,* 62 So. 3d 351, 359 (Miss. 2010) (affirming trial court's directed verdict against mother's bystander claim for emotional distress because mother was not present on the premises of apartment complex where her eleven-year daughter was statutorily raped); ***Summers ex. rel. Dawson v. St. Andrew's Episcopal Sch.***, 759 So. 2d 1203, 1210 (Miss. 2000) (holding that parents of young student molested by other students on school playground were not foreseeable plaintiffs for third-party, emotional-distress recovery because the parents were not located near the scene when the events occurred); *see also **Miles ex rel. Miles v. VT Halter Marine Inc.***, 792 F. Supp. 2d 919, 925-26 (E.D. La. 2011) (summary judgment entered against father of worker killed in shipyard accident claiming mental distress because alleged distress suffered by father was not caused by contemporaneous observance of accident; even though father was working nearby and came upon scene shortly after accident when resuscitation efforts were underway, father did not witness accident); ***Moore v. Kroger Co.***, 800 F. Supp. 429, 433 (N.D. Miss. 1992) (denied emotional-distress claims of family members of victim of motor-vehicle accident when family members did not witness accident); ***Campbell v. Beverly Enters.***, 724 F. Supp. 439, 440 (S.D. Miss. 1989) (denied emotional distress claim of family members of an allegedly

10

mistreated nursing-home patient because family members did not observe the alleged mistreatment).

¶20. The dissent finds Entergy's precept–and our acknowledgment of it–disingenuous because the federal courts made *Erie*[3] guesses as to prevailing Mississippi bystander law. The dissent, however, overlooks all the Mississippi case law that plainly rejects the dissent's position and rationale.

¶21. The dissent next calls us out for spending the first seven pages of our analysis relying principally on California caselaw to point out why the dissent is wrong instead of analyzing the case at hand. Here is why we did so. Prior to the dissent, our opinion began by thoroughly analyzing this case under the *Dillon* factors adopted by *Entex* (*see supra* and *infra*). The dissent, however, realizing that the undisputed facts of this case do not ascribe to the plain language of the *Dillon/Entex* factors, responded by contending that we had misinterpreted *Entex*. According to the dissent, because the *Entex* Court favorably quoted from *Dillon*, where the *Dillon* Court stated that courts should "take into account" the three *Dillon* factors when evaluating whether a bystander was a foreseeable plaintiff, we were wrong to treat these factors as prerequisites. And, according to the dissent, "a jury should decide whether the unique aspects of this burn injury should entitle Acey to relief." In response, we posed a number of questions that we had hoped the dissent would take into consideration, as California ultimately was forced to do.[4] The dissent's response: "I simply

---

[3]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 188 (1938).

[4] Again, we point out that, even under *Dillon* or pre-*La Chusa*, Acey would not have been entitled to bystander recovery under California law, as the *Hathaway* case, *supra*, illustrates.

11

am not concerned with post-*Dillon* jurisprudence in California. My concern is [Mississippi's] bystander liability jurisprudence, and [that] this Court never has said–until today–that the ***Dillon*** factors are 'mandatory requirements.'"

¶22. We failed. Rather than offer any legal explanation (or–rather–reasoning) why or how someone who was neither at or near the scene of the accident when it occurred, nor experienced a sensory or contemporaneous observation of the accident, may constitute a foreseeable plaintiff for bystander recovery under the ***Entex*** standards, the dissent stresses that ***Entex*** instructs that the ***Dillon*** factors need only be taken "into account." The only conclusion this logic yields is that ***Entex*** provides no standard at all. We do not so interpret ***Entex***.

¶23. Briefly, the following language from ***Entex*** is all the ***Entex*** Court relayed from ***Dillon***:

> The reasoning of the California Court in ***Dillon v. Legg***, 68 Cal. 2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968) in setting out the following factors in this type of claim is persuasive:
>
> > In determining, . . . whether defendant should reasonably foresee the injury to plaintiff, or, . . . whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. ***Dillon*** [68 Cal. 2d at 740-41, 69 Cal. Rptr. at 80, 441 P.2d at 920].

***Entex***, 414 So. 2d at 444 (emphasis added).

12

¶24.	Again, the *Entex* Court provided no discussion whatever as to why it found *Dillon* persuasive, only that it did so under the facts of the case before it. The *Entex* Court found all three *Dillon* factors were affirmatively met (not neutral). Thus, the plaintiff, McGuire, had presented a valid claim for bystander recovery. McGuire was located between fifteen and twenty feet from his home when it exploded. *Entex*, 414 So. 2d at 439. McGuire's wife was inside the home. *Id*. McGuire heard his wife's screams and saw their home consumed in flames. *Id*. McGuire assisted his wife in escaping from the burning home right before a second explosion occurred. *Id*. After considering the *Dillon* factors, this Court affirmed a verdict in McGuire's favor. *Id* at 444.

¶25.	In the case before us, Acey analogizes her situation to that in *Entex* and argues that her claims satisfy the *Dillon* factors. It is undisputed that Acey satisfies the third factor of *Dillon*, because Acey is A.A.'s mother, therefore, they are closely related. *Entex*, 414 So. 2d at 444 (citing *Dillon*, 441 P. 2d at 920). But Acey fails under the first two factors.

¶26.	Acey argues that factor one, whether plaintiff was located near the scene of the accident, is satisfied, because she arrived at the accident scene within minutes; her daughter was continuing to be injured as a result of the accident, since her body was still smoking and her skin was flaking, and A.A. was still located at the accident scene.[5] *Entex*, 414 So. 2d at

---

[5] For the sake of thoroughness, Acey contends that she arrived at the accident scene in seven minutes; however, this is based upon the usual travel time between where Acey was located when she learned of the accident and the accident scene. More than seven minutes would have elapsed between the time of the accident and the time Acey arrived at the scene. There is no indication in the record of the exact time A.A. was electrocuted, however, the record shows the following course of events: (1) the 911 call was placed at 10:45 a.m., reporting A.A.'s accident; (2) emergency responders were dispatched at 10:55 a.m.; (3) Acey received a phone call from the 911 dispatcher informing her of the accident at an unknown

444 (citing *Dillon*, 441 P. 2d at 920). Acey compares her subsequent presence at the accident scene to the situation in *Entex* by stating that Acey helped pull her daughter from the cotton picker, which is comparable to McGuire pulling his wife from a burning house. *Entex*, 414 So. 2d at 439. However, unlike McGuire, Acey was not present during the negligent event, and witnessed only the result of Entergy's alleged negligence. *See, e.g.*, *Hathaway*, 169 Cal. Rptr. 435. The deposition testimony of Acey, Berry, and Berry's son states that Berry's son moved A.A. from the top of the cotton picker and handed her to Berry, who held A.A. on the side-platform of the cotton picker until emergency responders arrived to remove A.A. from the machinery.

¶27.   Regardless of who removed A.A. from the cotton picker, it is undisputed that Acey was not present when A.A. grabbed the power line or when Berry and his son pulled A.A. down from the top of the cotton picker. Accordingly, we find that Acey does not meet the first factor of the *Dillon or Entex* test.

¶28.   Next, Acey argues that factor two, whether plaintiff suffers from the sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence, is satisfied, because she was not informed of her child's specific injuries before she arrived at the scene, and A.A.'s injuries were still developing when she arrived. *Id*. Acey goes on to compare this argument to the situation in *Entex,* because McGuire, at the time of the explosion, had his back turned away from the home.

_____

time after the accident was reported; (4) emergency responders arrived at the accident scene at 11:12 a.m.; (5) Acey's testimony states that she *thinks* that the emergency responders arrived within a few minutes of her arrival; (6) twenty-seven minutes elapsed between the time the 911 call was made and the time that emergency responders arrived on the scene.

14

*Entex*, 414 So. 2d at 439. Acey therefore argues that McGuire saw only the aftereffects, which is the same as Acey seeing the aftereffects when she arrived at the accident scene minutes later. However, as previously stated, *Entex* states that McGuire was present at the very moment the accident occurred and simultaneously heard his wife cry out. *Id*. at Undoubtedly, McGuire experienced a sensory and contemporaneous observation of the accident itself, not the aftereffects, as Acey contends.

¶29. Acey next calls attention to *Campbell*. In *Campbell*, the federal district court found that plaintiffs could not recover emotional-distress damages for injuries inflicted on their mother as a result of alleged mistreatment while she was living in a nursing home. *Campbell*, 724 F. Supp. at 440. The court opined that the Mississippi Supreme Court would not consider recovery without the occurrence of a "traumatic physical injury" or "threatened violent physical injury," and therefore denied plaintiffs' claim. *Campbell*, 724 F. Supp. at 442. In the case *sub judice*, Acey misconstrues the district court's statement to mean that bystanders who do not witness the negligent act can recover if direct physical injury or threatened violent physical injury was witnessed. As pointed out by the federal district court in *Moore*, *Campbell*, in making an *Erie* determination, merely assumed without deciding that even if third-party plaintiffs could recover without witnessing the actual event, the *Campbell* plaintiffs could not recover from such a claim because they could not make out a case for actual physical injuries suffered by the patient as a result of defendants' alleged negligence. *Moore*, 800 F. Supp. at 434 (construing *Campbell*, 724 F. Supp. at 441-442).

¶30. Further, this Court in *Summers* noted that *Campbell* did not expand the holding in *Entex*–nor could it. *Summers*, 759 So. 2d at 1210. In *Summers*, parents brought an action

15

against St. Andrew's Episcopal School, alleging they had suffered emotional distress resulting from their daughter's involvement in an incident while she was under the school's supervision. *Summers*, 759 So. 2d at 1206-10. This Court upheld the trial court's grant of summary judgment, holding that the parents' emotional distress did not equate to a contemporaneous observation because they were not located at or near the scene of the incident when the incident occurred. *Summers*, 759 So. 2d at 1211. In its opinion, this Court pointed to the fact that the plaintiffs in *Moore* argued that the language in *Campbell* expanded the holding of *Entex*, thus recognizing recovery for emotional distress even when the plaintiff was outside the area of "immediate sensory perception." *Summers*, 759 So. 2d at 1210 (citing *Moore*, 800 F. Supp. at 433). Summers agreed with *Moore*'s holding that "after-the-fact witnesses" cannot be included in the class of foreseeable plaintiffs. *Summers*, 759 So. 2d at 1210 (citing *Moore*, 800 F. Supp. at 434).

¶31. Lastly, Acey argues that the facts of this case are similar to a California Court of Appeals case in which the Court chose not to bar the plaintiff's claims alleging emotional distress from arriving at his home after emergency responders had arrived to extinguish a fire at his residence and to rescue his family members who were still inside. *Zuniga v. Housing Auth.*, 41 Cal. App. 4th 82, 103, 48 Cal. Rptr. 2d 353, 364, 95 Cal. Daily Op. Serv. 9689 (Cal. Ct. App. 1995), *abrogated on other grounds by Zelig v. County of Los Angeles*, 27 Cal. App. 4 th 1112, 1138, 45 P.3d 1171 (Cal. 2002). However, the California court specified that recovery was not barred because the accident was still occurring when plaintiff arrived at the scene. *Id*. At the time the plaintiff arrived, the fire was still blazing, and his family members were still trapped inside. *Id*. The court distinguished the situation from *Fife v. Astenius*, in

16

which the court barred recovery for family members who heard a vehicle collision and subsequently climbed over a wall to find a family member inside one of the vehicles. *Zuniga*, 41 Cal. App. 4th at 103, 48 Cal. Rptr. 2d at 364 (citing *Fife v. Astenius*, 232 Cal. App. 3d 1090, 1092-93, 284 Cal. Rptr. 16 (Cal. Ct. App. 1991)). The court in *Fife* held that the family did not contemporaneously observe the accident. *Id*. Accordingly, we find the facts of the case before us are distinguishable from *Zuniga* because, as previously stated, Acey was not at the scene of the accident when it occurred.

¶32. Therefore, Acey does not satisfy factor two of the *Dillon* test because she did not experience a sensory or contemporaneous observation of the accident. *Summers*, 759 So. 2d at 1211. Acey was an after-the-fact witness, thus, an unforeseeable plaintiff. *Summers*, 759 So. 2d at 1210. The United States District Court for the Eastern District of Louisiana recently interpreted and applied Mississippi law regarding bystander claims. *Miles ex rel. Miles v. VT Halter Marine Inc.*, 792 F. Supp. 2d 919, 925-26 (E.D. La. 2011). In *Miles*, a father and son were employed at the same shipyard but were, at the time, working on different parts of the barge, when the son fell and ultimately died. *Miles*, 792 F. Supp. 2d at 926. Testimony revealed that the father was informed of the accident and then walked to the accident scene, which was a five-to-ten minute walk. *Id*. When the father arrived, "he witnessed the aftereffects of the accident, namely five or six others performing resuscitation efforts and attempting to aid his son by placing an oxygen mask around his neck and a stretcher under his body." *Id*. The district court determined that Mississippi law would not allow the father to recover because he did not "actually witness the accident," which resulted in his son's injuries and later death. *Id*. Again, it is important to note that caselaw focuses

17

on the individual's observation of the accident rather than the observation of the resulting injury caused by the accident. *See Summers*, 759 So. 2d at 1210 (Miss. 2000); *Moore* , 800 F. Supp. at 434; *Miles*, 792 F. Supp. 2d at 925-26; *Fife*, 232 Cal. App. 3d 1092-93, 284 Cal. Rptr. 16.

**CONCLUSION**

¶33.     The *Entex* factors are mandatory requirements that bystander claims for emotional distress must satisfy to be accepted as valid under Mississippi law. Acey is barred from recovery because she was not near or at the scene of the accident, nor did she experience a sensory or contemporaneous observation of the accident. Therefore, summary judgment should be entered in favor of Entergy, and the judgment of the Circuit Court of Tunica County is reversed and remanded for proceedings consistent with this opinion.

¶34.     **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., CHANDLER AND COLEMAN, JJ., CONCUR. COLEMAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.**

**COLEMAN, JUSTICE, SPECIALLY CONCURRING:**

¶35.     I concur with the majority. As I appreciate it, the question before the Court in the case *sub judice* is whether Entergy owed a legal duty of due care to the plaintiff, Mary Bethanne Acey. I agree with the majority that, upon application of the *Entex* factors, Entergy did not and that the case should be reversed. I write separately for two purposes. First, I think it worth the time to emphasize that the question of whether a legal duty of due care exists is one of law and not fact. That it presents a question of law matters in the summary judgment

18

context, as I explain more fully below. Second, I write to further explore ***Campbell v. Beverly Enterprises***, 724 F. Supp. 439 (S.D. Miss. 1989), and the ways in which various courts have confused the effect it has, if any, on the law governing bystander recovery in Mississippi.

¶36. The Court in ***Entex v. McGuire***, 414 So. 2d 437 (Miss. 1982), gave two purposes for which the three-factor test at issue in the instant appeal – whereby courts in Mississippi could ascertain whether a defendant would be liable for emotional distress damages suffered by a bystander – could be used. One of the two was for a determination of "whether [a] defendant owes [a] plaintiff a duty of due care. . . ." ***Id.*** at 444. In our four-part negligence framework – duty, breach, causation, and damages – the question of whether one owes a duty of due care to another is one of law and lies within the sole province of the court. ***Rein v. Benchmark Constr. Co.***, 865 So. 2d 1134, 1143 (¶ 29) (Miss. 2004) ("In analyzing an actor's alleged negligence, this Court asks whether a duty exists and whether it has been breached. That is a question of law.") The judge, not the jury, decides whether an injury is reasonably foreseeable for the purpose of determining the first of the four negligence prongs – the existence of a legal duty. ***Id.*** (citing ***Lyle v. Mladinich***, 584 So. 2d 397, 399 (Miss. 1991)).

¶37. Summary judgment is appropriate when the question presented for determination – such as whether a legal duty exists in a negligence action – is one of law rather than fact. ***City of Jackson v. Gardner***, 108 So. 3d 927, 928 (¶ 4) (Miss. 2013). When no disputed facts exist, even mixed questions of law and fact become questions of law only. ***Hernandez v. Vickery Chevrolet-Oldsmobile Co., Inc.***, 652 So. 2d 179, 182 (Miss. 1995). Neither my review of the case nor the dissent has revealed to me any contested issues of fact that the jury

would need to determine in order for the Court to now conduct its *de novo* review of the issue presented. Although there are some contested issues of fact, *e.g.*, when the plaintiff learned of the accident that injured her daughter, I agree with the majority and am of the opinion that taking all disputed facts in a light most favorable to plaintiff still yields the result that, as a matter of law, the defendant owed no duty of due care to the plaintiff in the case *sub judice*.

¶38.    In a final matter, the majority discusses at length *Campbell*, 724 F. Supp. at 439, as well as a long line of cases that followed it. I write separately to explain my opinion that *Campbell* does not apply to the instant facts, and misapplication of *Campbell* threatens to confuse the test for whether a bystander can recover under negligent infliction of emotional harm.

¶39.    Acey called attention to *Campbell*, arguing that bystanders who witness the injury can recover if there was direct "physical" or "threatened violent physical injury." *See Campbell*, 724 F. Supp at 442. Acey takes the above-quoted language directly from *Campbell*, but – as the majority notes – she misconstrues it. The majority argues that Acey misconstrues *Campbell* because it is an isolated statement that does not simply mean bystanders can recover when the victim suffers threatened or physical injury.

¶40.    In *Campbell*, the children of a nursing home patient sued as a third party in a negligent infliction of emotional harm suit claiming "*prolonged* neglect toward their mother [that was] allegedly caused by acts which were intentional, outrageous, callous, willful, wanton and in a reckless disregard of the their mother's rights." *Id.* at 441 (emphasis added). The plaintiffs could not point to any one "accident" that caused injury to their mother. *See Entex*, 414 So. 2d at 444 (citing *Dillon v. Legg*, 68 Cal. 2d 728, 740-41 (1968)) (listing the factors for third

20

party emotional distress recovery). Faced with an issue of first impression, the district court surmised what the Mississippi Supreme Court would do in a similar situation – a situation where there is no specific traumatic event. The court determined that recovery would be an option, in the absence of a specific traumatic event, only when there was a "specific and serious physical injury" or "at least threatened violent physical injury" to the immediate victim – not the children bringing the suit. *Campbell*, 724 F. Supp at 441-42. The *Campbell* court denied recovery, stating that the children had not alleged that the mother had "suffered a violent or traumatic injury at the hands of defendant." *Id.* at 442.

¶41. The statements by the *Campbell* Court, as presented here by Acey, could be interpreted to mean that all a third party would need to prove to recover is that the victim suffered a physical injury; however, the judge in *Campbell* wrote that he read *Entex* to allow a bystander to recover only when the bystander witnesses "a sudden and unexpected traumatic event rather than a continuous series of events." *Campbell*, 724 F. Supp. at 441. The judge then hedged his *Erie* bet by continuing,

> However, even were this court of the view that the Mississippi Supreme Court would allow third-party mental distress recovery in the absence of a specific traumatic event, it is this court's opinion that such recovery would not be permitted without a specific and serious physical injury to another with whom a plaintiff shares a close relationship.

*Id.* at 441-442; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

¶42. Later courts have misconstrued *Campbell* in another way. Because *Campbell* was an issue of first impression – of whether a  third party can recover for mental distress in the absence of a specific traumatic event – the *Campbell* court first traced the law for whether a plaintiff who was *directly* harmed by the defendant's negligence can recover mental

21

distress damages.  The court then shifted to explain the law at issue, the law for third party recovery for mental distress when the third party's family member was directly harmed.  The *Campbell* opinion contains two distinct parts, and each part of the opinion traces different, yet related, areas of the law.  However, courts have misinterpreted and mixed up *Campbell*'s treatment of the two distinct areas of the law. Courts have implanted language dealing solely with direct plaintiff recovery to third party plaintiff recovery.  *Campbell* states, in reference to direct-plaintiff recovery:

> Thus, a person subjected to the negligent act of another can recover mental distress damages if that distress results in a medically cognizable condition for which treatment is required; if, rather than merely negligent, the defendant's conduct is *malicious, intentional or grossly negligent*, recovery may be had despite the absence of any physical manifestation of the emotional distress of the affected individual so long as the conduct is such that the resulting emotional distress was reasonably foreseeable.

*Campbell*, 724 F. Supp. at 440 (emphasis added).  *Campbell* appends that the standard for direct plaintiff recovery is simply the "garden variety" negligence standard. *Id.*

¶43.  Courts have interpreted the above "malicious, intentional, or grossly negligent" language in the context of third party recovery.  *Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So. 2d 1203 (Miss. 2000), stated, under the issue determining whether third party recovery survived summary judgment, that "[t]he plaintiffs . . . fail under the premises of *Campbell* because there is no documented physical injury to [the child] nor is there evidence of malicious, gross negligence on the part of [the school]."  *Id.* at 1211. *Moore v. Kroger Co.*, 800 F. Supp. 429 (N.D. Miss. 1992), correctly draws the distinction between the two parts of the *Campbell* opinion stating:

22

[I]n a discussion leading to [the] holding, the **Campbell** court traced the law in Mississippi concerning mental distress damages in the absence of physical manifestation. The court first discussed the law with respect to the *immediate victim*, who, depending on the maliciousness and gross nature of the negligence, could seek recovery despite the absence of actual physical injury.

. . .

**Campbell**'s discussion of grossly negligent behavior was in conjunction with the emotional distress of the *immediate victim*.

*Id.* at 433 (emphasis added). Thus, following the same reasoning promulgated by **Moore**, malicious and gross negligence applies where the immediate victim is seeking recovery, and as outlined above, **Campbell**'s holding applies to fact situations where there is no specific traumatic event. In the instant case, Acey is not the immediate victim, and there was a specific traumatic event: A.A. touched the power wire and was electrocuted. Therefore, **Campbell** does not apply, and **Summers** does not provide a valid argument for Acey to recover.

**RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**

**LAMAR, JUSTICE, DISSENTING:**

¶44. I do not agree that – at this stage of this proceeding and on this record – we can find as a matter of law that Acey cannot recover as a bystander.

¶45. As the majority points out, there are generally three factors that this Court considers to determine if a defendant should reasonably foresee injury to a bystander:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

***Entex, Inc. v. McGuire***, 414 So. 2d 437, 444 (Miss. 1982).  But the majority then proceeds to treat these three factors as a bright-line rule that absolutely bars recovery.  This, in my view, is an incorrect interpretation of ***Entex***.  In fact, the ***Entex*** Court favorably quoted the Supreme Court of California in ***Dillon v. Legg***,[6] where the California Court stated that courts should "take into account" the factors quoted above when evaluating whether a bystander was a foreseeable plaintiff – which is a far cry from treating the factors as "mandatory requirements" that a bystander must meet.  ***Entex***, 414 So. 2d at 444.

¶46.    Importantly, a closer review of the analysis in ***Dillon*** reveals that these factors are to be evaluated as a whole:

> The evaluation of these factors will indicate the [d]egree of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case.

***Dillon***, 441 P.2d at 920-21.

¶47.    Here, it is undisputed that factor three weighs heavily in Acey's favor.  And I find that, as this case currently stands, factors one and two are neutral at best.  There is testimony in the record that Acey arrived at the accident scene within seven minutes, where her daughter was still experiencing the effects of the severe electrical shock.  Specifically, Acey

---

[6] 441 P.2d 912 (Cal. 1968).

testified via affidavit that she observed smoke coming from her daughter's skin, the skin flaking and turning gray, her daughter's fingers missing and bones exposed, and that she could smell the odor of burning flesh – in other words, the injury was still occurring. Also, Acey's daughter had not been removed from the accident site when she arrived – she was being held by one of the farmers on the platform of the cotton-picker.

¶48. I agree with Justice Coleman that "the question of whether a legal duty of due care exists is one of law and not fact." But that determination cannot be made in a vacuum, because it is axiomatic that the existence of a duty necessarily depends on the specific facts of each case. And for purposes of a summary-judgment review, we are to view the facts in the light most favorable to Acey. If we do as instructed by the *Entex* Court and simply take these factors "into account," I cannot join the majority's conclusion that Acey may not recover as a matter of law.

¶49. Moreover, I note that virtually all of the authority relied on by the majority is from *federal* courts making *Erie* guesses as to the current state of Mississippi bystander law. So the majority's statement that "Mississippi law has been consistent regarding bystander recovery for emotional-distress damages" is disingenuous. (Maj. Op. ¶19). The majority relies heavily on federal court opinions waxing eloquently on Mississippi bystander law instead of actually analyzing the *Dillon* factors as *Entex* instructs. There is simply nothing in *Entex* or any of this Court's other precedent that categorically bars Acey's recovery here.

¶50. As a final note, it is interesting to me that the majority spends the first seven pages of its analysis pointing out all the reasons I am wrong instead of analyzing the case at hand, relying principally on caselaw from California. I do not "misunderstand" the application of

the ***Dillon*** factors; rather, I simply am not concerned with post-***Dillon*** jurisprudence in *California*. My concern is *our* bystander liability jurisprudence, and the fact remains that this Court never has said – until today – that the ***Dillon*** factors are "mandatory requirements."

¶51.     I stress again that ***Entex*** instructs this Court to take the ***Dillon*** factors "into account." My response to the majority's statement that I am overlooking "all the Mississippi caselaw that plainly rejects" my position is simple: "What law?"  Simply because the majority has been able to locate some cases in which bystander recovery was ultimately denied does not mean that our jurisprudence– properly interpreted –transforms the ***Dillon*** factors into mandatory requirements or categorically bars recovery here.  The majority's concern that my rationale will "no doubt result in infinite liability" is simply unfounded.  I say nothing more than that our current jurisprudence does not, as a matter of law, bar Acey's recovery here.

¶52.     For these reasons, I would dismiss this interlocutory appeal and allow the parties to proceed with discovery and trial.

**DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.**